## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

1.     **THE PONCA TRIBE OF INDIANS**   )
         **OF OKLAHOMA, in its Governmental;**  )
         **Capacity,**   )
                             )
         **Plaintiff,**   )
                             )
        **and**   )     **Case No. _____**
                             )

2.     **THURMAN BUFFALOHEAD,**   )
3.     **JESSE PAPPAN,**   )
4.     **GEORGIA ROY,**   )
5.     **SCOTTY SIMPSON, Sr., and**   )
6.     **MOLLIE WALKINGSKY,**   )
         **as representatives for the**   )     **CLASS ACTION**
         **Native American landowners,**   )
                             )
        **Plaintiffs,**   )
        **and**   )
                             )

7.     **KAREN HOWE on behalf of AH;**   )
8.     **BEVERLY BROWN on behalf of CD, SD,)**
         **RD, TD, TD, EJ, EJ, EJ, LL, CL, KK AR;)**
9.     **PATRICIA FEATHERS on behalf of**   )
         **MONTANA FEATHERS;**   )
10.     **SCOTTY SIMPSON, JR., on behalf of**   )
         **BS, KS, SS**   )
         **as representatives for those**   )
         **seeking future medical monitoring,**   )
                             )
        **Plaintiffs,**   )
                             )
        **and**   )
                             )

11.     **HARVEY ATKINS, JR;**   )
12.     **MARY ATKINS;**   )
13.     **BEVERLY BROWN;**   )
14.     **THELMA BUFFALOHEAD;**   )
15.     **THURMAN BUFFALOHEAD;**   )
16.     **VICTOR BUFFALOHEAD;**   )
17.     **PATRICIA FEATHERS on behalf of**   )
         **MONTANA FEATHERS;**   )
18.     **EVERETT GAYTON;**   )
19.     **DIANNA HADDOCK;**   )
20.     **BEVERLY BROWN on behalf of**   )
         **ANNABELLE LITTLEHOE; and**   )

21.     SYLVIA URIOSTE,                          )
                                                 )
            Plaintiffs,                          )
                                                 )
        and                                      )
                                                 )
22.     HARVEY ATKINS, JR on behalf of HA;  )
23.     ALICE BROWN on behalf of SH, SW,    )
        SJW, SDW;                               )
24.     EUGENIA S. BROWN on behalf of AW,  )
        SW, LW, MW, RW;                         )
25.     TALBERT COLE; on behalf of GC, MC; )
26.     KAREN HOWE on behalf of AH;          )
27.     KEVIN LEROY on behalf of KL;          )
28.     LAVONNA LIEB on behalf of AL, DL;   )
29.     SONJA LIEB on behalf of AL, DR;       )
30.     HERBERT PRIMEAUX on behalf of       )
        HP;                                    )
31.     DEANNA RHODD on behalf of            )
        CR, VR, DR, WR;                        )
32.     EAGLE RHODD on behalf of             )
        KR, WR, BR;                            )
33.     SYLVIA RHODD on behalf of            )
        CR KH, KH, LA, CL;                     )
34.     BEVERLY BROWNon behalf of            )
        CD, SD, RD, TD, TD, EJ, EJ, EJ; LL,   )
        CL, KK, AR;                            )
35.     SCOTTY SIMPSON, SR. on behalf of     )
        AS, JS;                                )
36.     SCOTTY SIMPSON, Jr. on behalf of     )
        BS, KS, SS;                            )
37.     SARA WARRIOR on behalf of AW; and )
38.     LEAH WHITEPLUME on behalf of         )
        GW, AW, ST,                            )
                                                 )
        Minor Native American Plaintiffs,      )
                                                 )
        v.                                     )
                                                 )
1.      CONTINENTAL CARBON COMPANY; )
2.      CHINA SYNTHETIC RUBBER CORP.; )
3.      CHINA SYNTHETIC RUBBER CORP.  )
        USA; and the                           )
4.      TAIWAN CEMENT CORP.,             )
                                                 )
            Defendants.                        )

## COMPLAINT

All Plaintiffs bring this action against Defendants, upon personal knowledge as to their own acts and status, and otherwise upon information and belief based upon the investigation of counsel, as follows:

### NATURE OF THE ACTION

1.      This suit is brought by and on behalf of persons and entities of Native American Heritage who have been exposed to or damaged by pollutants from the so called "Continental Carbon Company" facility (the "Facility") that is south of Ponca City, Oklahoma, near the intersection of State Highway 177 and East Oakland Avenue.  This suit is also brought by the Ponca Tribe of Indians (the "Ponca Tribe") with and on behalf of its citizens and all persons within or dependent upon the Ponca Tribe for the maintenance of their environment or the provision of services that meet basic human needs, including clean air, water and a healthy environment.

2.      The Ponca people wish to bring about a healing of the air, land and water in what has become the Tribal homeland since the Ponca Tribe was forcibly removed to these lands following their purchase from the Cherokee Nation in 1883.  The Ponca Tribe and its people have a unique spiritual, cultural, and historic relationship with their natural environment - the land, water and air – all of which is part of the Tribal customs, traditions and religions.  The Ponca people's relationship with their land and natural environment goes far beyond federal and state legal concepts of ownership, possession, or other legal rights.

3.      The Ponca people are one with the land and their natural environment and consider themselves stewards of it.  It is the duty of the Ponca Tribe's leaders to work for a healing of this land and natural environment, to protect it, and to pass it on to future generations.

3

The Ponca Tribe and its people bring this action with the hope that it may hasten the process of healing and reconciliation and bring lasting justice, peace, and respect among all who inhabit this area. Moreover, the ownership of Indian land is legally different than other ownership of land, yielding different kinds of damages when the use of the land and natural environment are interfered with or trespassed upon. Accordingly, a special class is needed to address the interests of Indian landowners.

4. This case is brought to address three main issues: 1) abatement of and compensation for the continuing and abatable trespasses and nuisances to the Plaintiffs and other similarly situated persons' lands and natural environment; and 2) compensation for those who are injured by exposure to the pollution from the Facility; and 3) the provision of future medical monitoring for those who have been exposed to the pollution from the Facility. Various theories of liability are plead, *inter alia*, claims for trespass, nuisance, failure to warn, personal injuries, negligence, future medical monitoring, unjust enrichment, actual damages and punitive damages in connection with Defendants' pollution of the Plaintiffs lands and natural environment from the Facility. This case is brought as a class action seeking future medical monitoring and the abatement and compensation for trespass and nuisances to the Plaintiffs and class members' lands.

<strong>JURISDICTION AND VENUE</strong>

5. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1353, 1360, 1362, and 1367. Venue lies in this District under 28 U.S.C. § 1391.

6. Plaintiff's claims for relief arise under federal common law; the United States Constitution; the Indian Trade and Intercourse Acts of 1790, 1793, 1796, 1799, 1802, and 1834, now codified at 25 U.S.C. § 177 *et seq*.; the ordinances and customs of the Ponca Tribe of Indians of Oklahoma, and any other relevant provision of applicable common law.

4

**PARTIES**

7.      The Plaintiff Ponca Tribe of Indians of Oklahoma is a sovereign Indian nation recognized by the United States through the Secretary of the Interior of the United States.  It is, and has been at all relevant times, an "Indian nation" within the meaning of the federal Indian Trade and Intercourse Acts of 1790 and later, now 25 U.S.C. § 177. The citizens of the Ponca Tribe reside principally on their territory or "reservation" south of Ponca City, Oklahoma.  The headquarters of the Ponca Tribe are near White Eagle, Oklahoma.

8.      The Ponca Tribe brings this action by the authority of the Business Committee of the Ponca Tribe, the sole government of the Ponca Tribe.  The government of the Ponca Tribe is recognized by the United States through the Secretary of the Interior.  The relationship of the Ponca Tribe to the United States has never been terminated.

9.      The Ponca Tribe sues on its own behalf and on behalf of its members and citizens who, in addition to those Ponca persons who have brought suit here, are unable to do so.  The Ponca Tribe owns substantial landholdings that receive the Defendants' pollutants that are released from the Facility.  The Ponca Tribe also brings this action with the other Plaintiffs to enjoin the public nuisance the Defendants are causing.  Where this suit is brought *parens patriae* and on behalf of all Native Americans by the Ponca Tribe the sole purpose is to implement the duty of the Ponca Tribe's leaders to work for a healing of the land, to protect it, and to pass it on to future generations.

10.      Thurman Buffalohead, Jesse Pappan, Scotty Simpson, Sr., Georgia Roy and Mollie Walkingsky, bring this lawsuit on behalf of themselves and others similarly situated as Native American landowners in and around the original reservation of the Ponca Nation, as it was constituted in 1883, where Indian lands have been damaged, and where uses of lands owned by Native Americans have been interfered with by the Defendants continuing release of

5

pollutants from the Facility, including carbon black.  As a group, these Plaintiffs are referred to herein as the "Native American Landowner Plaintiffs."

11.    Karen Howe on behalf of AH;[1] Beverly Brown on behalf of CD, SD, RD, TD, TD, EJ, EJ, EJ, LL, CL, KK, AR; Patricia Feathers on behalf of Montana Feathers; and Scotty Simpson, Jr. on behalf of BS, KS, SS bring this lawsuit as representatives for all those children who have been exposed to the continuing release of pollutants from the Facility and they seek on behalf of themselves and others similarly situated future appropriate medical screening, the creation of a class-wide medical registry, and medical research and the dissemination of information to health care workers who can put best use to the information in early disease identification, prevention, and treatment from exposures to carbon black, as well as a public oversight body to guide these activities in the public interest.  As a group, these Plaintiffs are referred to herein as the "Medical Monitoring Plaintiffs."

12.    Harvey Atkins, Jr; Mary Atkins; Beverly Brown; Thelma Buffalohead; Thurman Buffalohead; Victor Buffalohead; Patricia Feathers on behalf of Montana Feathers; Everett Gayton; Dianna Haddock; Beverly Brown on behalf of Annabelle Littlehoe; and Sylvia Urioste bring this action directly for personal injuries resulting to their persons from exposure to pollutants exiting the Facility.  As a group, these Plaintiffs are referred to herein as the "Personal Injury Plaintiffs."

13.    Finally, the parents or grandparents and next friends of the children identified below bring this action directly for personal injuries resulting to the children from exposure to pollutants exiting the Facility: Harvey Atkins, Jr. on behalf of HA; Alice Brown on behalf of SH, SW, SJW, SDW; Eugenia S. Brown on behalf of AW, SW, LW, MW, RW; Talbert Cole on behalf of GC, MC; Karen Howe on behalf of AH; Kevin Leroy on behalf of KL; Lavonna Lieb

---

[1]    Minor children are identified by their initials.

on behalf of AL, DL; Sonja Lieb on behalf of AL, DR; Herbert Primeaux on behalf of HP; Deanna Rhodd on behalf of CR, VR, DR, WR; Eagle Rhodd on behalf of KR, WR, BR; Sylvia Rhodd on behalf of CR, KH, KH, LA, CL; Beverly Brown on behalf of CD, SD, RD, TD, TD, EJ, EJ, EJ, LL, CL, KK, AR; Scotty Simpson, Sr. on behalf of AS, JS; Scotty Simpson, Jr. on behalf of BS, KS, SS; Sara Warrior on behalf of AW; and Leah Whiteplume on behalf of GW, AW, ST.  As a group, these Plaintiffs are referred to herein as the "Minor Native American Personal Injury Plaintiffs."[2]

14.    The Continental Carbon Company ("CCC") is a Delaware Corporation, headquartered in Houston, Texas, incorporated on June 27, 1995, and domesticated in Oklahoma on June 23, 2003.  CCC operates production facilities in Phenix City, Alabama; Ponca City, Oklahoma; and Sunray, Texas that were purchased by the China Synthetic Rubber Corporation ("CSRC") in 1995.  Additionally, CCC maintains a research and development laboratory in Houston that provides analytical research for both internal CCC product development and external customer support.  Marketing and sales offices for the carbon black produced at the Facility and other facilities are located in Houston; Atlanta, Georgia; Charlotte, North Carolina; and Akron, Ohio.  A bulk distribution center for products from the Facility and other plants is in Barberton, Ohio and makes sales from the Facility throughout the Midwest-region, including on information and belief, to users of carbon black in Oklahoma.

15.    The China Synthetic Rubber Corporation is a Republic of China Corporation who purchased the Facility directly on May 25, 1995 from the then "Continental Carbon Company" and the WITCO Corporation.  Prior to the purchase of the Facility, CSRC licensed technology from the then Continental Carbon Company to make carbon black.  Purchasing the Facility and the then Continental Carbon Company in May 1995 made the CSRC the fourth largest producer

_____

[2]    When the term "Plaintiffs" is used below without any other appellation, the word refers to all Plaintiffs, including the Ponca Tribe.

of carbon black in the world.  No earlier than June 27, 1995, the rights and liabilities to Continental Carbon Company were transferred into a newly incorporated Continental Carbon Company, which was formed by and is wholly owned and controlled by the CSRC and the Taiwan Cement Corporation ("TCC".)  CSRC affirmed in documents memorializing the May 1995 purchase of the Facility that it is "duly qualified to transact business as a foreign corporation" in Oklahoma.  CSRC and TCC, or their directors or officers, in conjunction with TCC, control the day-to-day activities at the Facility.  CSRC is a foreign corporation doing business in Oklahoma as a parent of CCC, owning two-thirds of CCC.  CSRC is a publicly traded company, listed on the Taiwan Stock Exchange.

16.     China Synthetic Rubber Corp, USA ("CSRC USA") is a corporation believed to be incorporated under the laws of the State of Delaware, and not registered to do business in Oklahoma.  The CSRC USA is nothing more than a paper shell holding company without any ability to act independently of CSRC or TCC.

17.     Taiwan Cement Corporation is a foreign corporation doing business in Oklahoma as a parent of CCC, and owning one-third of CCC.  Upon information and belief, TCC obtained ownership of the Facility directly in connection with the May 1995 purchase.  TCC or its directors or officers, in conjunction with CSRC, control the day-to-day activities at the Facility. TCC is a publicly traded company, listed on the Taiwan Stock Exchange.  TCC is not domesticated to do business in Oklahoma directly.

18.     CCC, CSRC, CSRC USA, and TCC are amenable to suit in this jurisdiction because of their ownership of property in this jurisdiction that was and is used to create the pollution complained of here; because of their transaction of business in this jurisdiction relating to the claims made in this Petition; and because of CSRC's prior affirmation in the May 1995 purchase of the Facility that it is "duly qualified to transact business as a foreign corporation" in

this jurisdiction. Moreover, TCC and CSRC directly control the day-to-day activities of the CCC, and are directly responsible for many of the decisions that have resulted in this lawsuit.

19. CCC, CSRC, CSRC USA, and TCC, derive profit from the sale of carbon black from the facility. Carbon black is a common name for carbon-containing products that are used as colorants, dyes, and preservatives in rubbers and plastics, among other things. Carbon black is often observed in a powdery form, and easily is made airborne as a dust or aerosol.

20. As a result of Defendants' illegal and/or unjust conduct, Plaintiffs seek actual damages for the Defendants torts, equitable relief, costs and expenses of litigation, including attorneys' fees, punitive damages and all further relief available. The Plaintiffs' claims include claims for the injuries and foreseeable threat of injury to the Plaintiffs' persons, as well as claims for the continuing pollution of their real properties. The Defendants are jointly and severally liable to the Plaintiffs.

**BACKGROUND**

21. The CSRC, CSRC USA, TCC, and CCC (herein the "CSR Companies") manufacture varying grades of carbon black at the Facility for commercial uses.

22. Carbon black manufacturing can cause air-polluting emissions. The resulting carbon black dust is very fine, black, and sticky. It is difficult to wipe off or clean off of skin, and it can be impossible to clean off of objects such as homes, buildings, children's toys, and cars. The inhaled carbon black and associated particulate matter can imbed itself in internal tissues, including lung tissues.

23. Vast quantities of pollutants – including carbon black – have been and continue to be released from the Facility into the environment in many forms, including as fugitive dust. The Pollutants, including the dust being released from the Facility has continuously and intermittently worsened over time, and has worsened to the extent that it now interferes with the

Plaintiffs' abilities to use their properties.  Some of the Plaintiffs have recently manifested personal injuries caused by exposure to the increased volumes of carbon black in their environment and such diseases have been particularly prevalent in the children and elderly as set forth herein.  The Oklahoma Department of Environmental Quality (the "ODEQ") has recently found that quantities of dusts exiting the Facility far exceed that which is permitted.  The Facility's continual breaches of the ODEQ's permits is well known.

24.     Carbon black particles often bind with other chemicals making them more hazardous than carbon black in its pure form.  For example, Polynuclear Aromatic Hydrocarbons ("PAHs") are often used as particle coatings in carbon black.  When PAHs are combined with carbon black dust, the resulting product is a hazardous air pollutant.

25.     The Occupational Safety and Health Administration ("OSHA") requires chemical manufacturers such as the CSR Companies to evaluate all products produced in the workplace to determine if they are hazardous.  Any chemical for which OSHA has established a permissible exposure limit (a "PEL") is automatically considered hazardous.  According to OSHA regulations, carbon black is considered hazardous.

26.     Carbon black contains constituents that are known to be carcinogens.  The carcinogenicity of carbon black has been clinically established.

27.     Repeated exposure to and inhalation of carbon black can cause health problems, including lung scarring , respiratory problems, and respiratory cancers.

28.     Material Safety Data Sheets on carbon black confirm that potential adverse health problems caused by carbon black include fibrosis of the lungs and tumors.  Carbon black dust can also cause and exacerbate pulmonary diseases, including asthma.  Placards on the Defendants rail cars, which pass in close proximity to several of the Plaintiffs homes,

10

acknowledge the hazardous nature of carbon black and that its inhalation causes negative health effects.

29.    Repeated exposure to carbon black causes damage to property, both real and personal, and interferes with the human use of the environment where the carbon black dust is present.

30.    Repeated complaints by the Plaintiffs and others resulted in numerous inspections of the Facility by the ODEQ.  ODEQ found on multiple occasions that the emissions from the Facility violated ODEQ regulations and caused emissions of carbon black.

31.    Samples collected and analyzed by the Plaintiffs show carbon black on each of their properties at times just prior to the filing of this complaint, and that such carbon black is consistent with the carbon black products produced by the CSR Companies.

32.    At all times relevant to this lawsuit, the CSR Companies have knowingly and intentionally released carbon black dust to the environment in amounts that are harmful to the Plaintiffs, that caused damage to the Plaintiffs' property, and that are harmful to human health and the environment.  The CSR Companies have attempted to conceal this information, and made no attempt to warn the Plaintiffs of the dangers and health risks associated with their repeated exposures to carbon black from the Facility.

33.    The CSR Companies actions were done without regard for the Plaintiffs properties or their health, or the health and welfare of the public.  The Defendants acts were done in willful disregard of their duty to the public and the Plaintiffs in the release of toxic and hazardous particles and emissions.

34.    The CSR Companies wrongful conduct constitutes a continuing violation in tort. The Plaintiffs have been and are continuing to be damaged by the CSR Companies wrongful acts

and omissions. The CSR Companies must be immediately enjoined from their wrongful conduct.

35.    The Ponca Tribe, by resolution, has found that CCC, through the operations of the Facility, has and continues to pose a Public Nuisance, Trespass, and Public Endangerment to the Ponca individual members and the Ponca Tribe of Indians as a sovereign nation.

## CLASS ALLEGATIONS

36.    A portion of this action is brought as a class action, pursuant to Federal Rule of Civil Procedure 23 by the Native American Landowner Plaintiffs on behalf of all persons of Native American heritage whose lands have been and are continuing to be damaged by the CSR Defendants. A separate but related class action is also included in this litigation, pursuant to Federal Rule of Civil Procedure 23 by the Medical Monitoring Plaintiffs on behalf of all persons and entities who have been exposed to pollutants from the Facility, seeking future medical monitoring of their health.

37.    The members of the classes are so numerous that joinder of all the individual members is impracticable. It is believed there are more than 500 properties owned by persons of Native American heritage that have been and continue to be polluted by releases from the Facility. It is also believed there are more than 1,000 persons who have been exposed to pollutants from the Facility, and for whom future medical monitoring would be expected to provide the benefits of early disease detection, prevention and treatment. Therefore, it is believed the two classes include more than 1,500 persons with interests in and around Kay County, Oklahoma.

38.    The claims of the Native American Landowner Plaintiffs and the Medical Monitoring Plaintiffs and their respective Classes of persons raise common questions of law and

12

fact that predominate over any questions affecting only individual Class members.    These

questions include, but are not limited to, the following:

    (a)    Whether the CSR Companies have and continue to interfere with the Native American Landowner Plaintiffs' use and enjoyment of their properties?

    (b)    Whether the CSR Companies have and continue to cause pollutants to be released from the Facility that have come to reside upon the Native American Landowner Plaintiffs' lands, property, and persons?

    (c)    Whether the CSR Companies have caused pollutants to be released from the Facility to which the Medical Monitoring Plaintiffs have been exposed?

    (d)    Whether the CSR Companies' release of pollutants from the facility has caused the Medical Monitoring Plaintiffs and those other persons who have been exposed to them to be at a greater future risk of certain diseases?

39.    The Native American Landowner Plaintiffs and the Medical Monitoring Plaintiffs

claims are, respectively, typical, if not identical, to the claims of the class and are based upon the

same factual and legal theories.  Specifically, regarding the first class, the CSR Companies have

discharged pollutants from the Facility and onto their lands, property and persons in violation of

Tribal, federal and state anti-pollution laws, which makes such discharges without or in excess of

permit amounts unlawful.  Moreover, this continual rain of pollutants on the Native American

Landowner Plaintiffs is a continuing nuisance and trespass to them as it is to other Native

Americans.  Regarding the second class, the Medical Monitoring Plaintiffs have all been exposed

to the CSR Companies' pollutants, increasing their future likelihood of disease.  The wrongs

suffered and the remedies sought by the Medical Monitoring Plaintiffs, and the other Class

members who have also been exposed to the CSR Companies' pollutants are identical, and

Defendants have no defenses unique to the Medical Monitoring Plaintiffs.

40.    The Native American Landowner Plaintiffs and the Medical Monitoring Plaintiffs

will fairly and adequately represent the interests of the respective Classes.  Each of the Native

American Landowner Plaintiffs and the Medical Monitoring Plaintiffs are committed to prosecute this action vigorously and have retained competent counsel experienced in class action litigation of this nature. The Native American Landowner Plaintiffs and the Medical Monitoring Plaintiffs are members of the Class and do not have interests antagonistic to, or in conflict with, other members of their respective Class with respect to this litigation or claims being raised herein.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The prosecution of separate actions by individual Class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of Class members to protect their interests.

42.    A class action will result in an orderly and expeditious administration of this controversy and of Plaintiffs' and the Class members' claims, and it will save the Court and the parties' economies of time, effort, and expense, as well as assure uniformity of decisions.

43.    The Plaintiffs do not anticipate any difficulty in the management of this litigation as a class action.

## CLAIMS AT LAW AND EQUITY

### COUNT I
### TRESPASS

44.    Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

45.    The CSR Companies have intentionally and continuously or intermittently caused a trespass to the Plaintiffs persons and properties by releasing and dispersing toxic and harmful substances and related materials from the Facility. The CSR Companies release of toxic and

14

harmful substances and related materials is the direct and proximate cause of the injuries and damages to the Plaintiffs.

46.    The Plaintiffs are therefore entitled to damages in an amount in excess of $10,000, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of the CSR Companies conduct alleged herein.

## COUNT II
## PRIVATE NUISANCE

47.    Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

48.    CSR Companies actions in connection with the emissions of pollutants from the Facility in excess of that allowed by law subject Plaintiffs to unreasonable inconvenience, interference, annoyance, and loss of use and value of their property, and their use of the resources around them, including the air.

49.    The Native American Landowner Plaintiffs and Ponca Tribe are therefore entitled to damages in an amount in excess of $10,000, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of the CSR Companies conduct alleged herein.

## COUNT III
## PUBLIC NUISANCE

50.    Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

51.    CSR Companies conduct in connection with the emissions of pollutants and related materials from the facility constitutes a public nuisance in violation of Oklahoma law.

52.    As a result of such nuisance, Plaintiffs have suffered, and will continue to suffer injuries to their property, persons, government, traditions, and social and cultural fabric.

53. This Court has the authority to enjoin and abate the continuation of the CSR Companies conduct alleged herein. Unless abated or enjoined by this Court, the threat of continued damage to the Plaintiffs' property and/or health, persons, government, traditions, social and cultural fabric by the CSR Companies will continue, and the Defendants will continue to be unjustly enriched to the detriment of the Plaintiffs.

54. The Plaintiffs are therefore entitled to damages in an amount in excess of $10,000, and to equitable relief in the form of appropriate injunctive or abatement relief, as a result of the CSR Companies conduct alleged herein.

## COUNT IV
## FAILURE TO WARN

55. Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

56. The CSR Companies have together participated in the manufacture, creation, and production of carbon black dust and other related pollutants and the release and dispersal of these pollutants from the Facility have and continue to harm the Plaintiffs, their lands, and other property. Because the CSR Companies created this hazard to the Plaintiffs, their lands, and their property, they had and have a duty to warn the Plaintiffs of the inherent danger of the manufacture, creation, production and release of carbon black dust and related pollutants from the Facility.

57. The Plaintiffs are therefore entitled to damages in an amount in excess of $10,000 as a result of the CSR Companies conduct alleged herein.

## COUNT V
## PERSONAL INJURIES

58. The Personal Injury Plaintiffs and the Minor Native American Personal Injury Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

16

59.    CSR Companies caused toxic and hazardous pollutants to be released from the Facility.  The Personal Injury Plaintiffs and the Minor Native American Personal Injury Plaintiffs have been exposed to the CSR Companies toxic and hazardous pollutants.  Certain of the Personal Injury Plaintiffs have recently exhibited fibrosis of their lungs, tumor growth, and lung scarring consistent with exposure to carbon black environmental pollution.  Other Personal Injury Plaintiffs and Minor Native American Personal Injury Plaintiffs have complained increasingly of worsening breathing, respiratory and pulmonary problems, including asthma, and heart disease.

60.    The CSR Companies continual and intermittent release of toxic and hazardous pollutants from the Facility has, upon information and belief, caused the Personal Injury Plaintiffs and the Minor Native American Personal Injury Plaintiffs personal injuries described above.

61.    The Personal Injury Plaintiffs and the Minor Native American Personal Injury Plaintiffs are therefore entitled to damages in an amount in excess of $10,000 as a result of the Defendants' conduct alleged herein.

**COUNT VI**
**NEGLIGENCE**

62.    Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

63.    The CSR Companies owe the Plaintiffs a duty to not allow pollutants to be released from the Facility and onto their persons, their homes, their land, and their property.  The CSR Companies breached these duties, and have caused damage to the Plaintiffs lands, properties, government, traditions, and social and cultural fabric, and injuries to their persons.

64.    Plaintiffs are therefore entitled to damages in an amount in excess of $10,000 as a result of the CSR Companies conduct alleged herein.

17

## COUNT VII
## MEDICAL MONITORING

65.    The Medical Monitoring Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

66.    CSR Companies caused toxic and hazardous pollutants to be released from the Facility.  The Medical Monitoring Plaintiffs have been exposed to the CSR Companies toxic and hazardous pollutants.  Certain of the Plaintiffs and others have recently exhibited worsening breathing, respiratory and pulmonary problems, including asthma consistent with exposure to carbon black environmental pollution.

67.    The Medical Monitoring Plaintiffs are at a foreseeable, increased risk of contracting many diseases, including cancer, as a result of exposure to the toxic and hazardous pollutants released from the Facility.

68.    The CSR Companies must be compelled, under Oklahoma law, to pay the future cost of monitoring the Medical Monitoring Plaintiffs foreseeable, increased risk of contracting many diseases, including cancer, and the Defendants must establish a common fund in sufficient amount to provide such monitoring for twenty-five years.  The Medical Monitoring Plaintiffs request that such fund be adequate to at all times provide adequate medical screening, to maintain a disease registry, to fund relevant medical research and provide information to health professionals to aid in the early detection, prevention and treatment of diseases likely resulting from the Medical Monitoring Plaintiffs exposure to the CRS Defendants pollutants.

## COUNT VII
## UNJUST ENRICHMENT

69.    Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

18

70.     The CSR Companies has and continues to avoid the cost of implementing the proper pollution control equipment, improperly operates the Facility, causing the wastes from the Facility to rain down on the Plaintiffs' lands and properties and causing personal injuries and damages to the government, traditions, and social and cultural fabric of the Plaintiffs.

71.     Under Oklahoma law, the Plaintiffs are entitled to recover from the CSR Companies the expenditures avoided by the CSR Companies unjustly, or which it would be unconscionable for them to retain, which at a maximum would include the profits obtained by the CSR Defendants as a result of their pollution of the Plaintiffs.

72.     Accordingly, the Plaintiffs are entitled to equitable damages for unjust enrichment from the CSR Companies.

## COUNT VIII
## PUNITIVE DAMAGES

73.     Plaintiffs incorporate by reference all of the prior paragraphs, as if fully set forth herein.

74.     The acts and omissions of CSR Companies were willful, malicious, reckless and done in wanton disregard of Plaintiffs' property rights and health, entitling Plaintiffs to punitive damages against CSR Companies.

75.     Accordingly, the Plaintiffs are entitled to punitive damages in accordance with 23 O.S. § 9.1.  Because the CSR Companies actions were intentional, or were a willful disregard of the Ponca Tribe and the Native American Landowner's property rights and interests, the Ponca Tribe and Native American Landowner Plaintiffs are entitled to tier II punitive damages under 23 O.S. § 9.1.  Moreover, because the Defendants actions were intentional, or were done in willful disregard of the Personal Injury Plaintiffs, Minor Native American Personal Injury Plaintiffs, and Medical Monitoring Plaintiffs rights, persons, and lives, and because the CSR Companies

19

continuing releases of pollutants from the Facility directly impacts and risks human health and life, these Plaintiffs are entitled to have any cap on punitive damages waived under 23 O.S. § 9.1.

## RESERVATION OF CLAIMS

The Ponca Tribe and the individual members are not pursuing any claims for damages to natural resources pursuant to 42 USCA § 9601 and hereby expressly reserve their rights to pursue all other statutory environmental causes of action.

## PRAYER FOR RELIEF

**WHEREFORE**, together, all Plaintiffs request that this Court award actual damages and punitive damages against the CSR Companies and for the Plaintiffs as set forth herein. All Plaintiffs further request that the Court enjoin the CSR Companies continued operation of a public and private nuisance, remediation of their properties, and award to all Plaintiffs their costs and disbursements of this action, including reasonable fees for attorneys and experts, as well as providing such other, further, and different relief as may be just and proper under the laws of the State of Oklahoma.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.

## ATTORNEYS' LIEN

Attorneys hereby assert a lien against any settlement or judgment in this matter.

20

Respectfully submitted,


/s/ Kalyn Free_____
Kalyn Free, Esq., OBA #12298
406 South Boulder, Ste. 101
Tulsa, Oklahoma 74103
(918) 583-6100 *telephone*
(918) 583-6104 *facsimile*

*-and-*

Jason B. Aamodt, OBA #16974
Rayanne G. Tobey, OBA #16659
AAMODT & TOBEY
406 South Boulder, Ste. 101
Tulsa, Oklahoma 74103
(918) 583-6100 *telephone*
(918) 583-6104 *facsimile*


*ATTORNEYS FOR PLAINTIFFS*

Wednesday, April 20, 2005

21