IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) ) |
| Defendants/Third Party Plaintiffs, | ) ) |
| vs. | ) ) |
| CONOCOPHILLIPS, a Corporation, | ) ) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Continental Carbon Company and CCC USA Corp.'s ("CCC"), Motion for Judgment on the Pleadings. Plaintiff filed a Response to which CCC filed a Reply. The matter is now at issue.

CCC filed the present motion arguing that Plaintiffs have failed to establish any basis for subject matter jurisdiction and therefore the action must be dismissed. In response, Plaintiffs argue there are ample grounds for the Court's exercise of subject matter jurisdiction over this matter and therefore CCC's motion should be denied. Plaintiffs also note that CCC's motion is procedurally improper as it is in reality brought pursuant to Fed. R. Civ. P. 12(b)(1), and the time for filing such a motion has passed. Nevertheless, Plaintiffs agree the

issues regarding the Court's power to decide this matter should be decided. Accordingly, the Court will not consider the timeliness of CCC's motion.

Because CCC's motion challenges the Court's subject matter jurisdiction, it will be considered under the standards applicable to Rule 12(b)(1) motions. See 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) ("For example, if a party raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)." (footnote omitted).).

The Tenth Circuit has established the analysis to be applied in resolving challenges brought pursuant to Rule 12(b)(1):

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

Holt v. United States, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted).

Here, CCC challenges the facts upon which the Court's subject matter jurisdiction is premised. Therefore, the Court can consider the evidentiary materials attached to the parties' briefs. The next question is whether the Court must consider the issues pursuant to Rule 12(b)(1), or as if brought pursuant to Rule 12(b)(6). See id. at 1003 ("[A] court is required

to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."). "Jurisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." Sun Valley Gasoline, Inc. v. Ernst Enters., Inc., 711 F.2d 138, 139 (9th Cir. 1983) (quoting Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983)). CCC's challenge to the facts which Plaintiffs argue vest the Court with subject matter jurisdiction are not intertwined with the merits of Plaintiff's claims. Accordingly, the Court will consider CCC's motion under Rule 12(b)(1) standards.

Plaintiffs argue subject matter jurisdiction exists under 28 U.S.C. §§ 1331, 1332, 1362 and 1367. CCC denies any of these statutes confer jurisdiction under the facts of this case. The Court will consider each statute in turn.

Sections 1331, 1360 and 1362

Plaintiff Ponca Tribe[1] argues the Court has jurisdiction to consider its claims because it is a federally chartered entity or that its claims arise under federal common law and therefore jurisdiction is proper under § 1331.

---

[1] From a review of the pleadings and the parties' arguments in the present briefs, neither the individual Plaintiffs nor the putative classes assert § 1331 as a basis for jurisdiction for the claims they bring. To the extent such an argument could be raised, it is fully addressed by the Court's resolution of Ponca Tribe's arguments.

According to Plaintiff Ponca Tribe, it was chartered as a federal corporation and because that charter permits it to complain and defend in any court, it may bring this case in federal court. Plaintiff Ponca Tribe argues <u>Am. Nat'l Red Cross v. S.G.</u>, 505 U.S. 247 (1992), supports its argument. Plaintiff Ponca Tribe's argument ignores the clear holding of that case. The very issue in that case was whether language in a charter that permitted an entity to sue and be sued in any court was sufficient to confer federal jurisdiction. The Supreme Court held such general language was insufficient, stating: "These cases support the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it specifically mentions the federal courts." <u>Am. Nat'l Red Cross</u>, 505 U.S. at 255. Here, Plaintiff Ponca Tribe's charter does not specifically mention federal courts and therefore jurisdiction cannot be premised on the charter.

Plaintiff Ponca Tribe argues that because its claims seek to enforce its tribal laws which protect its property and people, the claims arise under federal common law and therefore jurisdiction exists under § 1331. Plaintiff Ponca Tribe argues that the law relating to § 1360 establishes that federal common law supplies the law applicable to its claims and therefore those claims arise under §§ 1331 and 1362. According to Plaintiff Ponca Tribe, it has determined by application of tribal law that Defendants' actions are creating a nuisance on its land.

The Court finds no merit in Plaintiff Ponca Tribe's reliance on § 1360. That section grants the states enumerated therein jurisdiction over claims involving Indians located within

the state. Oklahoma is not one of the enumerated states and Plaintiff Ponca tribe has offered no authority demonstrating the statute should be extended beyond its plain language.

Plaintiff Ponca Tribe's reliance on § 1362 does little to resolve the issue. That statute states: "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." First the statute does not provide federal court jurisdiction to a claim merely because it is brought by an Indian tribe. Rather, as the statute's language make clear, jurisdiction exists only where the claim "arises under the Constitution, laws, or treaties of the United States." Id. This statute was passed at a time when § 1331 had a monetary requirement similar to that now found in § 1332 and was intended to permit Indian tribes to proceed in federal court even when the jurisdictional amount could not be met. See H.R. Rep. 89-2040 as reprinted in 1966 U.S.C.C.A.N. 3145, 3146:

> The purpose of the proposed legislation is to provide that the district courts are to have original jurisdiction of all civil actions brought by Indian tribes or bands wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States. These civil actions would therefore be permitted without regard to the $10,000 jurisdictional amount provided in section 1331(a) of title 28, when brought by an Indian tribe or band under the authority of the new section added by the bill.

The Supreme Court has noted that the statute may be broad enough to grant federal jurisdiction over a claim by a tribe where the claim was of the type that could have been brought by the United States on the tribe's behalf. See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 474 (1976) ("We think that the

legislative history of §[1]362, though by no means dispositive, suggests that in certain respects tribes suing under this section were to be accorded treatment similar to that of the United States had it sued on their behalf."). However, Plaintiff Ponca Tribe has provided no authority demonstrating that the claims it pursues here are of the type that could have been brought by the United States on behalf of the tribe if the United States had so desired. Accordingly, § 1362, provides a jurisdictional basis for Plaintiff Ponca Tribe's claims only if they arise under the Constitution, laws, or treaties of the United States.

The remaining argument pressed by Plaintiff Ponca Tribe is that federal law applies to enforce the resolution finding Defendant CCC harmed its land. Relying on MacArthur v. San Juan County, 391 F.Supp.2d 895 (D. Utah 2005), Plaintiff Ponca Tribe argues it is permitted to press this claim in federal court. As Defendant CCC notes in its reply brief, MacArthur does not reach as far as Plaintiff Ponca Tribe argues. Rather, that case dealt only with whether or not a tribal court had jurisdiction over non-tribal members so that the order of the tribal court could be enforced. As the MacArthur Court noted, that issue clearly raises a federal question. MacArthur, 391 F.Supp.2d at 986; see also Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 852 (1985) ("The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331."). Thus, had Plaintiff Ponca Tribe attempted to pursue a claim against Defendant CCC in tribal court, federal law would apply to determine whether or not the tribal court could exercise jurisdiction over Defendant CCC. However, neither of these

cases stand for the proposition that a *resolution* passed by a tribal committee creates a federal question and thereby permits the tribe to pursue its claims in federal court. Indeed, it is likely that enforcement of a resolution is improper as there is no indication the resolution was passed after giving Defendant CCC notice and an opportunity to be heard. See MacArthur v. San Juan County, 309 F.3d 1216, 1225 (10th Cir. 2002):

> We are unwilling to enforce judgments of tribal courts acting beyond their authority, especially where defendants have a federal right "to be protected against an unlawful exercise of Tribal Court judicial power," Nat'l Farmers, 471 U.S. at 851, 105 S.Ct. 2447; *see* Wilson [v. Marchington], 127 F.3d [805] at 810 [(9th Cir. 1997)] (holding that "federal courts must neither recognize nor enforce tribal judgments if: (1) the tribal court did not have both personal and subject matter jurisdiction; or (2) the defendant was not afforded due process of law").

Thus, Plaintiff Ponca Tribe has failed to plead facts demonstrating its claims arise under the Constitution, laws, or treaties of the United States. Accordingly, Plaintiff Ponca Tribe has failed to plead facts demonstrating jurisdiction is proper under § 1331 or 1362.[2]

Section 1332

Defendant CCC argues that jurisdiction cannot be premised on 28 U.S.C. § 1332 because Plaintiff Ponca Tribe is not a citizen of any state and therefore there is no diversity.[3] Plaintiff Ponca Tribe disputes this assertion, arguing that because it is incorporated under Oklahoma law, it is a citizen of Oklahoma for diversity purposes. See 28 U.S.C. § 1332(c) (a corporation is deemed a citizen of the state in which it is incorporated). In its Reply,

---

[2] Because the Court has found no jurisdiction exists under § 1331, it is unnecessary to address Plaintiffs' argument that § 1367 provides supplemental jurisdiction.

[3] There is no dispute that the amount in controversy requirements of § 1332 are met.

Defendant CCC notes its agreement with the general legal premise asserted by Plaintiff Ponca Tribe but argues that the entity bringing suit here is not the corporate portion of the Tribe but the Tribe itself. Thus, Defendant CCC argues, citizenship is lacking and there is no diversity.

Review of the Complaint makes clear that Plaintiff Ponca Tribe brings its claims as a sovereign and not as a corporate entity. As Defendant CCC notes in its Reply, this fact is clear by comparison of the name assigned to the corporate entity (Ponca Indian Tribe of Oklahoma) as opposed to the name used by the sovereign entity in bringing this action (Ponca Tribe of Indians of Oklahoma). It is the sovereign's name that is listed in the caption and referred to in the body of the Complaint. Further, examination of the nature of the claims brought establishes that this litigation is brought by the sovereign entity rather than the corporate entity. Thus, Plaintiff Ponca Tribe cannot rely on its corporate status to establish it as a citizen of a state and thereby confer jurisdiction on this Court. See Gaines v. Ski Apache, 8 F.3d 726, 729 (10th Cir. 1993) (noting distinction between corporate and sovereign entities of a tribe and holding that only corporate entity is a citizen for diversity purposes). Consequently, Plaintiff Ponca Tribe is governed by the general rule that "Indian tribes are not citizens of any state for purposes of diversity jurisdiction." Id., citing Standing Rock Sioux Indian Tribe v. Dorgan, 505 F.2d 1135, 1140 (8th Cir. 1974); Oneida Indian Nation v. Oneida County, 464 F.2d 916, 922-23 (2d Cir. 1972), *rev'd on other grounds, 414 U.S. 661 (1974).*

In arguing the lack of jurisdiction pursuant to § 1332, Defendant CCC's motion seeks dismissal of the Complaint in its entirety, arguing that because Plaintiff Ponca Tribe is not a citizen of any state there is not complete diversity. Plaintiffs do not directly respond to this argument, instead relying on the argument that jurisdiction exists over the claims of Plaintiff Ponca Tribe.

Upon review of the Complaint, it appears that each of the individual[4] Plaintiffs are diverse from Defendants and that the amount in controversy is met. Thus, any one of the individual Plaintiffs could proceed in this Court. The problem arises when Plaintiff Ponca Tribe is thrown into the mix. As noted above, the tribal entity that brought this suit is not a citizen of any state. Thus, complete diversity is lacking. See Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Housing Auth.,207 F.3d 21, 27 (1st Cir. 2000) ("It follows that, notwithstanding the joinder of other diverse parties, the presence of an Indian tribe destroys complete diversity."). The question is whether the Court may dismiss Plaintiff Ponca Tribe and permit the action to proceed with the remaining individual Plaintiffs or whether both the Tribe and individual Plaintiffs must be dismissed.

In certain instances, a court faced with incomplete diversity may determine whether or not the non-diverse party is indispensable. If not, the court may then dismiss the non-diverse party and the case may proceed. However, that analysis has only been employed to address situations where the non-diverse party is a defendant. Here, the non-diverse party

---

[4] The claims of the classes are discussed *infra*.

is a plaintiff. The Court has been unable to locate any Tenth Circuit case dealing with this precise issue. However, the Supreme Court dealt with a similar issue in Corporation of New Orleans v. Winter, 14 U.S. 91 (1816). In Winter, one of the plaintiffs was a citizen of the Mississippi Territory. After determining that she could not sue in federal court because she was not a citizen of any state, the Supreme Court determined that the entire case must be dismissed. "In this case it has been doubted, whether the parties might elect to sue jointly or severally. However this may be, having elected to sue jointly, the court is incapable of distinguishing their case, so far as respects jurisdiction, from one in which they were compelled to unite." Id. at 95. Here, because Plaintiffs have offered no authority or argument as to whether they can or wish to proceed individually, the Court will dismiss both Plaintiff Ponca Tribe and the individual Plaintiffs, as complete diversity is lacking.

Class Action Fairness Act

Plaintiffs' Complaint proposes two potential classes, a Native American Landowners class and a medical monitoring class. Defendant CCC asserts that because complete diversity is lacking, the claims of the class members should be dismissed. The Court disagrees. The Complaint in this matter was filed on April 20, 2005. The Class Action Fairness Act of 2005, ("CAFA"), Pub. L. 109-2, 119 Stat. 4, became effective on February 18, 2005, and therefore applies to Plaintiffs' class claims.

A portion of CAFA amended § 1332 to permit prosecution of class action claims in federal court where the class members exceed 100, the aggregate amount in controversy exceeds $5,000,000.00 and at least one plaintiff is diverse from at least one defendant. 28

U.S.C. § 1332(d). These elements are met here. The Class Plaintiffs' Brief in Support of Their Motion for Class Certification (Dkt. No. 124), asserts there are 342 potential members in the property class and 242 potential member to the medical monitoring class. Further, the Class Plaintiffs' allegations regarding the damages sought make clear that they are pursuing sums well in excess of the jurisdictional threshold of CAFA. Finally, it is clear that at least one of the Class Plaintiffs for each of the proposed classes is of diverse citizenship from Defendant CCC. Thus, the requirements for jurisdiction under § 1332(d) are met for the proposed classes. As the Ninth Circuit has noted, CAFA has abolished the requirements of complete diversity. See Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 680 (9th Cir. 2006):

> Section 1332(d), added by CAFA, vests the district court with "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which" the parties satisfy, among other requirements, minimal diversity. Section 1332(d) thus abandons the complete diversity rule for covered class actions.

(footnote omitted). Thus, Defendant CCC's request to dismiss the class claims due to the presence of the Plaintiff Ponca Tribe will be denied.

## **CONCLUSION**

As set forth more fully herein, Defendants Continental Carbon Company and CCC USA Corp.'s Motion for Judgment on the Pleadings (Dkt. No. 158) is GRANTED in part and DENIED in part. The Court lacks subject matter jurisdiction over the claims of Plaintiffs Ponca Tribe of Indians and the individual Plaintiffs. Thus, the claims of those parties are

DISMISSED without prejudice. However, the Court has subject matter jurisdiction over the proposed class claims of the Native American property owners and the medical monitoring Plaintiffs. Accordingly, the motion is DENIED as to these Plaintiffs.

IT IS SO ORDERED this 13th day of July, 2006.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge