IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) | |
| Defendants/Third Party Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CONOCOPHILLIPS, a Corporation, | ) ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed the present action alleging numerous torts arising from Defendant

Continental Carbon Company's ("CCC")[*] operation of a carbon black production plant in

Ponca City, Oklahoma.  As the parties moved through the discovery phase, an impasse

developed over certain of Plaintiffs' requests.  After the parties were unable to reach a

resolution of the dispute, Plaintiffs filed the present motion seeking an order from the Court

compelling certain discovery from CCC.  In their motion, Plaintiffs request the Court order

CCC to: (1) fully and completely supplement its responses to Plaintiffs' discovery requests,

---

[*] As used herein, CCC shall also include Defendant CCC USA Corp.

including documents and information obtained or generated after their prior responses to Plaintiffs; (2) produce the computer records that have been requested; (3) produce the financial reports in their complete form as requested; (4) produce the engineering environmental records requested; and (5) reproduce their documents either in the form they are used and maintained by the company, as complete documents or files, or to reproduce the documents and indicate for each document to which discovery request the document responds.

1.  Computer Records

   *A.  Data Historian*

Plaintiffs have requested that CCC permit them to image or download to a database all information stored in the data historian.  Plaintiffs argue that the information recorded by the data historian is necessary to permit them to perform a more accurate mass balance calculation.  Plaintiffs initially proposed imaging or mirroring the data historian as a means of easily obtaining the requested information.  CCC objected, arguing that such imaging would necessarily require approximately 100 days to complete and that any such imaging would violate the licensing for the operating software used by the data historian.  In their Reply, Plaintiffs now suggest that the information from the data historian may be downloaded into a data base using software currently possessed by CCC.  CCC responds, arguing that they do not own the software modules suggested by Plaintiffs, but that such software could be purchased for approximately $5,000 and would require another $5,000 in training/programming to make the modules useable.

Irrespective of the availability of the data or the difficulty in producing it, CCC argues the information sought by Plaintiffs is not reasonably calculated to lead to discoverable or admissible evidence and therefore the discovery should be denied.  However, in the event the Court determines the information is discoverable, CCC requests the Court require Plaintiffs to pay the cost for the software module and programming, as well as post a bond to cover any potential damage that may occur during the exporting process.

The materials presented by the parties make clear that the discovery of the data historian sought by Plaintiffs imposes an undue burden on CCC.  Further, CCC has established that the expense of providing the information sought outweighs any benefit it may provide to Plaintiffs.  Thus, CCC has established its right to object to the request.  See Cardenas v. Dorel Juvenile Group, Inc., 232 F.R.D. 377, 380 (D. Kan. 2005) (The party asserting an undue burden objection to a discovery request has the burden to show not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery.).  Conversely, Plaintiffs have failed to come forward with a sufficient argument demonstrating that their need for the information contained within the data historian outweighs the burden producing it imposes on CCC.

Further, it appears that the information sought by Plaintiffs is overly broad.  As CCC notes, the data historian records information from 719 data points in one-minute increments. CCC has provided Plaintiffs with a key which identifies the information recorded by each of the data points.  CCC then suggested that Plaintiffs identify those data points which are relevant to their request, thereby greatly reducing the volume of information sought.  CCC

further suggested that Plaintiffs narrow their request to certain days and limit the time intervals, again reducing the volume of the information sought and thereby making it feasible to produce the information either in a spreadsheet or on a web site.  Plaintiffs refused these suggestions arguing that such a narrowing is not feasible.  However, Plaintiffs have offered no evidence demonstrating the basis for this conclusion.  Thus, in light of the Court's finding regarding the unreasonable burden imposed by the request as well as the minimal, if any, relevance, Plaintiffs' request to image or download the data base from the data historian will be denied.  However, to the extent Plaintiffs express a willingness to purchase the necessary software and pay for the necessary programming, and post the bond as suggested by CCC, the parties may revisit the issue and seek the assistance of the Court should they be unable to reach an agreement on their own.

    *B.  E-Mails/Computer Data*

    Plaintiffs also complained that CCC has failed to produce e-mail and other electronic documents in the manner in which they are kept in the order and course of business.  According to Plaintiffs, CCC has instead produced the equivalent of pictures of the e-mails.  Plaintiffs also complained of the production of what they assert are photocopies of other electronic documents rather than producing those documents in their native electronic version.  Plaintiffs request the Court permit them to make mirror image copies from certain computers used by identified key personnel at CCC's plant.

    The Court finds Plaintiffs have failed to provide adequate support for their requested relief.  The original document requests issued by Plaintiffs failed to specify the manner in

which electronic or computer information should be produced.  CCC elected to use a commonly accepted means of complying with the request.  Nothing in the materials provided by Plaintiffs supports requiring CCC to reproduce the information in a different format.  Accordingly, Plaintiffs' request for reproduction of documents in their native electronic format will be denied.  However, the Court notes the parties have agreed to produce certain information in electronic form and that certain of Plaintiffs' later requests specified the manner in which the information should be produced.  The Court's ruling has no impact on the parties' agreements to produce the documents in a specified form.

*C. Manner of Production*

Plaintiffs complain about the manner in which CCC provided electronic documents, arguing they were produced as single page documents with no consideration of the organization.  Nor was it readily apparent which pages connect to which pages.  Rather, Plaintiffs argue, the documents were presented in a jumbled mass "dump truck" delivery.

In response, CCC asserts the documents were produced precisely as they were obtained from company files and were in sequential order and there was no shuffling or mixing of the pages.  CCC notes that Plaintiffs have been provided with text files which are, in fact, the load files Plaintiffs complain they never received and from which Plaintiffs can easily reconstruct the manner in which the documents were loaded.

The Court is not persuaded that CCC has produced the documents in a manner or form designed to frustrate Plaintiffs' use of the material.  Indeed, it appears from the parties' representations to the Court that the production to Plaintiffs followed the accepted industry

practice and that Plaintiffs are capable of manipulating the information in a manner which makes it sufficiently usable.  Accordingly, Plaintiffs' motion will be denied on this issue.

2.  Financial Records

Plaintiffs requested copies of financial reports from CCC USA, Inc., and unredacted copies of CCC's financial reports.  CCC's only objection to production of the financial reports was the assertion in its general objection that the request was objectionable to the extent it seeks information or documents that are not relevant to the claims or defenses in this action or that are not reasonably calculated to lead to the discovery of admissible evidence. In responding to the discovery request, CCC offered no further explanation for the refusal to produce the requested information.  Now, in its response, CCC argues the requested information lacks relevance because it contains financial information for other plants and/or information for CCC's parent company.  The Court finds CCC's argument lacks merit. Plaintiffs have offered sufficient argument and evidence demonstrating the financial information sought is either relevant or appears reasonably calculated to lead to the discovery of admissible evidence.  Among other possible issues, the financial information may certainly be relevant to Plaintiffs' request for punitive damages.  Accordingly, CCC will be required to produce unredacted copies of the financial reports for Continental Carbon Company and CCC USA Corp.

3.  Duty to Supplement

Plaintiffs argue that CCC has disavowed any duty to supplement.  According to Plaintiffs, when pressed on the issue, CCC asserted that it had a duty to supplement only

when responses are found to be incorrect.  Plaintiffs argue that Fed. R. Civ. P. 26(e) also requires supplementation when answers are incomplete and Plaintiffs assert when new responsive documents are generated the old answers are incomplete thus triggering the requirement to supplement.  CCC responds arguing Plaintiffs have misconstrued its position. According to CCC, its understanding of the rule is that supplementation is required only when a party learns of new information that renders a previous answer incorrect or incomplete.  CCC also notes that Plaintiffs recently served an eighth set of discovery requests which likely render the issue moot as they seek documents for the time period elapsed since the prior request and make the request continuing through the conclusion of the action.  CCC asserts it has agreed to produce the requested information.

The Court is not persuaded CCC's response moots the issue.  The response to the eighth request contains a number of qualifying statements regarding what will be produced and reiterates CCC's position that its duty to supplement arises only when it learns of incomplete or incorrect information.  The duty to supplement under Rule 26(e) is neither as broad as that argued by Plaintiffs nor as narrow as asserted by CCC.  While CCC is correct that the rule imposes a duty to supplement only after the party or its attorneys learn of incomplete or incorrect information, the spirit in which the discovery rules operate preclude a party or its attorney from remaining willfully ignorant of information that is within the scope of a valid request.  See United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) ("Modern instruments of discovery serve a useful purpose, as we noted in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451.  They together with pretrial procedures

make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent."). Thus, the rules impose on CCC and its attorneys a duty to be aware of Plaintiffs' discovery requests and when information arises that renders a prior response incomplete or incorrect, it must be supplemented. However, there is no obligation to undertake a continuous search for responsive material.

4.  Request for Hearing

Plaintiffs have filed a separate Motion for Hearing seeking an opportunity to appear before the Court to offer evidence and further argue their position on obtaining the information from the data historian and the computer data. The Court finds a hearing is not warranted. The additional information Plaintiffs propose is insufficient to overcome the reasons precluding discovery noted above. Further, CCC has provided evidence establishing that much of the information on which Plaintiffs rely in support of the hearing is erroneous.

5.  Costs and Fees

Both parties have requested the costs and fees incurred in preparing or responding to the motion. Because the Court finds some issues in favor of both parties, an award of fees to either party is unwarranted. See Fed. R. Civ. P. 37(a)(4)(A)&(B).

**CONCLUSION**

As set forth more fully herein, Plaintiffs' Motion to Compel (Dkt. No. 190) is GRANTED in part and DENIED in part. CCC shall, within ten days of the date of this Order, produce unredacted copies of the financial statements of Continental Carbon Company and CCC USA Corp. In all other respects Plaintiffs' Motion is Denied. Further,

Plaintiffs' Motion for Hearing and Supplemental Notice in Relation to Their First Motion to

Compel (Dkt. No. 228) is DENIED.

IT IS SO ORDERED this 11th day of October, 2006.

ROBIN J. CAUTHRON
United States District Judge