IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case Number CIV-05-445-C |
| | ) | |
| CONTINENTAL CARBON COMPANY, et al., | ) | |
| | ) | |
| Defendants/Third Party Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CONOCOPHILLIPS, a Corporation, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed this action seeking recovery for damages allegedly caused by
Defendant Continental Carbon Company's operation of a carbon black plant just outside of
Ponca City, Oklahoma.  Plaintiffs filed the present motion seeking certification of a class
pursuant to Fed. R. Civ. P. 23(b)(1)(B), (b)(2) or (b)(3).  Defendants Continental Carbon
Company and CCC USA Corp. (jointly "CCC") object, arguing Plaintiffs have failed to
satisfy the requisites of Rule 23.  Plaintiffs define the proposed class as:  "All Native
American persons owning an interest (including mortgagee and other security interests) in
real property situated within the Property Class Area, exclusive of governmental entities,

defendants and defendants' affiliates, parents and subsidiaries." See Dkt. No. 124, p. 30.[1]

CCC challenges Plaintiffs' request, arguing that the named Plaintiffs lack standing, that the

proposed class definitions are not sufficiently definite, and that Plaintiffs have failed to meet

the requirements of Rule 23(a) and/or Rule 23(b).

1.  Standing

As CCC notes, in all cases the Court must satisfy itself that the plaintiffs have

constitutional standing to pursue the claims brought.  The Tenth Circuit has set forth the

standard for considering the issue:

> "To satisfy constitutional standing requirements, a plaintiff must demonstrate
> the presence of three elements:  (1) injury in fact–meaning the invasion of a
> legally protected interest that is (a) concrete and particularized, and (b) actual
> or imminent, not conjectural or hypothetical; (2) a causal relationship between
> the injury and the challenged conduct–meaning that the injury can fairly be
> traced to the action of the defendant; and (3) a likelihood that the injury will
> be redressed by a favorable decision–meaning that the prospect of obtaining
> relief from . . . a favorable ruling is not too speculative."

Rector v. City & County of Denver, 348 F.3d 935, 942 (10th Cir. 2003) (quoting Bd. of

County Comm'rs v. Geringer, 297 F.3d 1108, 1111 (10th Cir. 2002)).  The Circuit has also

recognized the applicability of this question to class actions.  See Milonas v. Williams, 691

F.2d 931, 937 (10th Cir. 1982).  Here, CCC argues Plaintiffs have failed to establish the

proposed class representatives have demonstrated an injury in fact and, therefore, lack

standing.  According to CCC, Plaintiffs' expert did no testing on the land of Mr. Hinton and

---

[1]  Although Plaintiffs originally sought certification of a Medical Monitoring class, that request was
withdrawn in Plaintiffs' Memorandum of Law and Reply to the Defendants' Response to Plaintiffs' Motion
and Brief for Class Certification, Dkt. No. 179.

Mr. Buffalohead.  CCC also argues that the samples taken from Ms. Howe's property are inadequate, because the 2006 sample tested negative for carbon black and the 2005 sample did not specify the amount of carbon black, and it is impossible to determine whether carbon black was present in quantities sufficient to cause harm.  Finally, CCC argues that Plaintiffs have failed to demonstrate the carbon black that was found can be fairly traced to its plant as opposed to another of the sources present in the area.  In response, Plaintiffs note that samples taken from the property of Ms. Howe and Mr. Atkins showed the presence of carbon black.  Plaintiffs argue that the quantity of carbon black and whether it can be traced to CCC are questions that go to the merits and are therefore inappropriate for resolution at the certification stage.

Plaintiffs' assertion that questions going to the merits are inappropriate for consideration at this stage is slightly overstated.  While it is true that the Court should focus on whether the requirements of Rule 23 are satisfied and make no decision as to whether Plaintiffs' claims have merit,[2] the question at hand is not yet one of class certification.  Rather, CCC has raised a challenge to the standing of the proposed Plaintiffs to proceed at all.  Thus, there must be evidence to satisfy the requirements noted in Rector.

The Court finds that Mr. Hinton, Mr. Buffalohead, Ms. Howe, and Mr. Atkins have pleaded facts which if proven would demonstrate sufficient injury to satisfy the standing inquiry.  As the Circuit explained in Jackson v. Volvo Trucks N. Am., Inc., 462 F.3d 1234,

---

[2] See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974).

1241-42 (10th Cir. 2006), "[t]he purpose of the standing inquiry is not to determine whether a party has *proven* its case but to gauge whether it should be granted access to the federal courts.  The focus of the injury element is on ensuring a legitimate dispute between the parties."   Here, Plaintiffs have pleaded facts demonstrating that the property class representatives have suffered at least some injury, as there are allegations of at least some pollution to their land.  Thus, the Plaintiffs have shown the existence of a dispute between the parties.  To the extent the injury is to be measured by the amount or significance of the pollution, that question raises an issue of the amount of damage, not the existence of damage.

As for CCC's challenge to Plaintiffs' showing of a causal relationship, the Court finds Plaintiffs have also satisfied this element.  Plaintiffs' evidence demonstrates that CCC is a producer of carbon black and that at least some amount of carbon black leaves CCC's plant and is deposited on the proposed representatives' land.  Determinations of the amount of carbon black that actually came from CCC as opposed to another producer is an issue for another time.

As there is no meaningful dispute that should Plaintiffs prevail their injury will be redressed, the Court finds that Plaintiffs have established Mr. Amos Hinton, Mr. Thurman Buffalohead, Ms. Karen Howe, and Mr. Harvey Atkins, Jr., have  standing to seek certification as class representatives.

2.  Class Definition.

As noted above, Plaintiffs propose to define the class as "All Native American persons owning an interest (including mortgagee and other security interests) in real property situated

within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries." CCC argues this definition is unworkably broad as it is administratively infeasible to determine who is a "Native American." CCC argues that ensuring a person falls within Plaintiffs' proposed class definition would require first defining whether "Native American" includes all North American indigenous people or just those who have some membership rights in a tribe. CCC argues it is unclear whether the definition would include only those members of a federally-recognized tribe or whether members of other tribes would also fall within the definition. Finally, CCC argues it will be difficult if not impossible to determine whether a person is actually a tribal member as there are varying definitions among the recognized tribes.

Plaintiffs argue the definition is appropriately narrow. First, Plaintiffs assert the geographic scope of the class was determined by their experts based on the degree of pollution deposited on the land. Thus, Plaintiffs argue it will be relatively easy to establish the parcels included within the class definition. As for the owners of those parcels, Plaintiffs note that the Kay County Clerk will have records and the BIA will have records for trust land. Thus, once the parcels are identified it will be a relatively easy process to identify the owners of the parcels. Once the owners are identified, Plaintiffs assert the membership rolls of the Ponca Tribe and the BIA will allow a determination of whether the property owner is a "Native American." Finally, Plaintiffs note that each person seeking to participate in the class will have to demonstrate proof of inclusion.

The Court finds CCC's arguments unpersuasive.  As Plaintiffs note, the only class remaining is a property damage class seeking recompense for damage to realty.  Plaintiffs' experts have established the geographic limits of the class and Plaintiffs assert the remaining issues regarding property ownership and ethnicity can be easily addressed.  Although the Court is not as optimistic as Plaintiffs regarding the extent to which the BIA will cooperate in the process, to the extent there is a question regarding the eligibility of a person to proceed as a member of the class, Plaintiffs have the burden of proof on the issue.  See Roman v. ESB, Inc., 550 F.2d 1343, 1348 (4th Cir. 1976) ("the definition of the class is an essential prerequisite to maintaining a class action"); Rossin v. S. Union Gas Co., 472 F.2d 707, 712 (10th Cir. 1973) ("The plaintiff has the burden of proving that the action is appropriately a class action.").  In the event Plaintiffs fail to offer sufficient proof that the property owners in question meet the requirements of Rule 23, the class will be decertified.  See Fed. R. Civ. P. 23(c)(1)(C); In re Integra Realty Res., Inc., 354 F.3d 1246, 1261 (10th Cir. 2004) ("a trial court overseeing a class action retains the ability to monitor the appropriateness of class certification throughout the proceedings and to modify or decertify a class at any time before final judgment.").

3.  Rule 23(a).

As the parties seeking certification, Plaintiffs bear a strict burden of proving that all the requirements of Fed. R. Civ. P. 23(a) and the requirements of one subsection of Fed. R. Civ. P. 23(b) are met.  Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 435 (10th Cir. 1978).  Fed. R. Civ. P. 23(a) lists the following prerequisites to any class action:  "(1) the

class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

The decision whether to certify "involves intensely practical considerations, most of which are purely factual or fact-intensive." Reed v. Bowen, 849 F.2d 1307, 1309 (10th Cir. 1988). "Each case must be decided on its own facts, on the basis of 'practicalities and prudential considerations.'" Id. (quoting U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 406 n.11 (1980)). Therefore, the Court focuses on whether the requirements of Rule 23 are satisfied and makes no decision as to whether Plaintiffs' claims have merit. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974). And, although courts are inclined to err in favor of certification, Plaintiffs are in no way excused from their strict burden of proof. Meyers v. Sw. Bell Tel. Co., 181 F.R.D. 499, 501 (W.D. Okla. 1997); see also Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982) (requiring courts to perform a "rigorous analysis" to ensure that procedural requirements are met).

### A.  Numerosity

Rule 23(a) requires that the putative class be so numerous that joinder is impracticable.  Plaintiffs claim that they meet the numerosity requirement because there are at least 201 individual parcels within the geographic boundaries of the proposed class. Further, there are more individual property owners than individual parcels.  Although Plaintiffs cannot merely allege that they meet the numerosity criteria, they are not required

to demonstrate the precise number of potential class members.  See Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 930 (11th Cir. 1983).  However, "the number of class members is relevant, but the language of the rule as construed emphasizes that this criterion is not a 'numerousness test,' but rather a determination of impracticability of joinder."  Indep. Sch. Dist. No. 89 v. Bolain Equip., Inc., 90 F.R.D. 245, 247 (W.D. Okla. 1980) (citing 4 Newberg Class Actions § 7512, at 9 (1977)).  As noted above, Plaintiffs have the burden of establishing it is impracticable to join the proposed members of the class in the present action. Here, Plaintiffs have satisfied that burden.  Given the fractional ownership interests it is clear that the actual class members will far exceed the number of parcels.  Further, given the limited fractional interests of some of the potential class members, it would be impracticable to join them as party plaintiffs.  Finally, while it is true, as CCC argues, that the issue deals with an area of limited geographic scope, that limit exists only as to the real property.  The owners of that property and hence the actual class members may be widely dispersed.  Consequently, the Court finds Plaintiffs have established the numerosity requirement.

### B.  Commonality and Typicality

Commonality exists when all plaintiffs share at least one common issue of law or fact. J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1288 (10th Cir. 1999).  Although commonality focuses on the characteristics of the class, typicality "focus[es] instead on the desired characteristics of the class representative."  1 Newberg on Class Actions § 3:13 (4th ed.

2002).  The Court applies the typicality criteria to determine whether there is a relationship between the common class claims and those asserted by the Plaintiffs.  Id.  In this regard,

> [t]he commonality and typicality requirements . . . tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

Falcon, 457 U.S. at 158 n.13.

Despite argument by CCC to the contrary, the presence of unique claims or defenses does not necessarily defeat commonality and typicality.  See J.B., 186 F.3d at 1288.  Rather, the Court must determine whether there exists a common thread among the claims.  Here, that thread clearly exists.  Each property owner is seeking recompense for damage to property allegedly caused by CCC's pollution.  While the extent of any such damage may vary among the property owners, whether or not CCC is responsible will remain constant.

As for the typicality question, CCC argues that the proposed class representatives fail to satisfy this requirement as the property they own is closer to the plant than that of the majority of the proposed class, they obtained their property in a different manner, and they own rural property where most of the proposed class is urban property.  CCC's arguments lack merit.  The Tenth Circuit has made clear that "differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988).  Here, this requirement is met.  The claims of the class representative are precisely the same as those pursued by the proposed class.  While the

issues raised by CCC may have some bearing on the nature and extent of the damages that may be available, they are not sufficient to overcome Plaintiffs' showing of typicality

### C. Adequacy of Representation

Rule 23(a)(4) requires that the named Plaintiffs adequately and fairly represent the class. The Court gives special scrutiny to this factor because of due process concerns implicated in binding absentee class members to a final judgment. See Zapata v. IBP, Inc., 167 F.R.D. 147, 161 (D. Kan. 1996). "'Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"[3] Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

The parties gloss over the question of whether the proposed class representatives will adequately represent the class. Plaintiffs offer a conclusory statement that the representatives are typical of, aligned with, and have no conflicts of interest with the class members. CCC fails to address the issue at all, focusing solely on the adequacy of class counsel. Despite this lack of information from the parties, the Court finds the proposed class representatives will

---

[3] Although the legal adequacy of counsel may still be quoted as part of the analysis under Rule 23(a)(4), Fed. R. Civ. P. 23 was amended in 2003 to separate the two inquiries. See Fed. R. Civ. P. 23(g) advisory committee's note (2003). "Rule 23(a)(4) will continue to call for scrutiny of the proposed class representative, while [Rule 23(g)] will guide the court in assessing proposed class counsel as part of the certification decision." Id. Therefore, the Court addresses only the legal adequacy of the class representatives in this section and separately addresses issues relating to class counsel below.

adequately represent the class.   As noted above, the proposed class representatives are

bringing identical claims and are typical of the class members.   Further, there is no evidence

suggesting the proposed representatives would have a conflict of interest in the matter.   Once

the class members are given notice they will clearly have the opportunity to bring any such

issues to the Court's attention and any necessary change in the class representatives can be

addressed at that time.

3.  Adequacy of Class Counsel – Rule 23(g)

Rule 23(g)(1)(C) sets out the issues for the Court to consider in determining who to

appoint as class counsel.  That rule states:

In appointing class counsel, the court

(i) must consider:
      • the work counsel has done in identifying or investigating potential
      claims in the action,
      • counsel's experience in handling class actions, other complex
      litigation, and claims of the type asserted in the action,
      • counsel's knowledge of the applicable law, and
      • the resources counsel will commit to representing the class;

(ii) may consider any other matter pertinent to counsel's ability to fairly and
adequately represent the interests of the class;

(iii) may direct potential class counsel to provide information on any subject
pertinent to the appointment and to propose terms for attorney fees and
nontaxable costs; and

(iv) may make further orders in connection with the appointment.

CCC argues that the proposed class counsel are inadequate, noting certain discovery

difficulties and questions regarding the sufficiency of the jurisdictional issues framed by its

Motion to Dismiss.  However, the Court finds the issues raised by CCC to be insufficient to prevent appointment of the proposed counsel.  While there have certainly been difficulties in moving this case to trial, the Court is not prepared to lay the blame for those difficulties solely at the feet of Plaintiffs' counsel.  Further, while the Court did grant a portion of CCC's Motion to Dismiss, the errors found therein were not so fundamental as to raise a question as to the abilities of Plaintiffs' counsel.  Further, Plaintiffs' counsel have done substantial work in identifying claims for Plaintiffs and preparing to present those claims to a jury.  The materials appended to Plaintiffs' briefs demonstrate that proposed counsel have significant experience in handling similar matters.  Finally, it is apparent from the mountains of documents filed at every turn that Plaintiffs' counsel are devoting substantial time and money to the pursuit of this matter.  In short, the Court finds that the proposed counsel satisfy the requirements of Fed. R. Civ. P. 23(g)(1)(C)(i) and that they will fairly and adequately represent the class.  Accordingly, Kalyn C. Free, Jason B. Aamodt, and Richard Casey Cooper shall be appointed as class counsel.

4.  Rule 23(b)

Plaintiffs seek certification of a class under Fed. R. Civ. P. 23(b)(1)(B), (b)(2) and/or (b)(3).  The requirements of each subpart will be considered in determining the propriety of certification.

A.  *Rule 23(b)(1)(B)*.

Plaintiffs seek certification of a class under this subpart to address their claims for unjust enrichment and punitive damages.

In pertinent part, Rule 23(b)(1)(B), states:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Plaintiffs assert that in the absence of class certification it is possible that multiple judgments against CCC will deplete its assets to the extent that not all judgments will be satisfied.  CCC argues that Plaintiffs have failed to establish the existence of a limited fund.  CCC also notes that the proposed class is comprised only of Native Americans and thus does not include all persons who could raise similar claims.  As CCC notes, the Supreme Court considered the scope of Rule 23(b)(1)(B) classes in <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815 (1999).[4]  After considering the history of Rule 23(b)(1)(B), and the equity cases that predated adoption of the Rule, the Supreme Court noted the subpart is particularly inappropriate for use in mass tort cases.  <u>Id.</u> at 844-45.  The Supreme Court further noted that any such application of Rule 23(b)(1)(B) must closely adhere to the practice preceding its adoption.  <u>Id.</u> at 845.  Thus, it was incumbent on plaintiffs to establish the existence of a limited fund and that all persons who had similar claims were included in the class.  As CCC noted, Plaintiffs have failed to

---

[4]  While Ortiz was focused on a settlement class, the reasoning underlying its limited use of Rule 23(b(1)(B) is equally applicable to the present case.

13

satisfy either requisite.  Accordingly, the request for certification under Rule 23(b)(1)(B) will be denied.

### B.  Rule 23(b)(2)

Plaintiffs seek certification of a class under Rule 23(b)(2) for their claims for failure to warn, unjust enrichment, and injunctive relief.  In pertinent part Rule 23(b)(2) states:  "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."  Plaintiffs argue the class may be certified under this subpart even though they are also seeking monetary damages.  While it is true that Rule 23(b)(2) classes have been certified where the relief sought was both injunctive and monetary, both the Advisory Committee's notes to Rule 23 and Tenth Circuit precedent indicate that certification is not appropriate where the relief sought is primarily money damages.  See Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966) (noting that subsection (b)(2) "does not extend to cases in which the appropriate final relief relates . . . predominantly to money damages"); Monreal v. Potter, 367 F.3d 1224, 1236 (10th Cir. 2004).  Here, the assertions in Plaintiffs' Amended Complaint, at a minimum, cast doubt on whether injunctive relief is truly the predominate relief sought.  As the proponent of certification, Plaintiffs have the burden of demonstrating satisfaction of the prerequisites.  Plaintiffs have failed to meet this burden and the request for certification under Rule 23(b)(2) will be denied.

*C. Rule 23(b)(3)*

To be certified as a class action under section (b)(3), the action must have "questions of law or fact common to the members of the class [that] predominate over any questions affecting only individual members" and certification must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To make these findings, the Court considers "the interest of members of the class in individually controlling the prosecution or defense of separate actions; . . . the desirability or undesirability of concentrating the litigation of the claims in the particular forum; . . . [and] the difficulties likely to be encountered in the management of a class action." Id.

CCC argues that certification under this subpart is inappropriate because individual issues predominate.  CCC argues that each Plaintiff must prove whether carbon black is on their property, the quantity of carbon black; the source of the carbon black; whether the interference caused on the property by the carbon black is unreasonable; when the carbon black reached the property; who owned the property when the carbon black first appeared; the extent of the property owner's interest in the property; and the extent of the harm caused by the carbon black.  CCC also argues that it will require an individualized hearing to determine who is eligible to be a class member, thus making the class unmanageable.

CCC's arguments are without merit.  Initially, at least some of CCC's arguments go to the merits of Plaintiffs' claims and therefore are inappropriate for consideration at this time.  See Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982).  Rather, at this stage, the Court must accept the allegations offered by Plaintiffs and determine whether,

based on them, the requirements of Rule 23 are met. Id. The remainder of CCC's arguments focus on damages issues. It is clear that a class may be certified under Rule 23(b)(3) even where individualized questions of damage exist. See 7AA Wright, Miller & Kane, Federal Practice and Procedure, 3d § 1778, 122-23 (2005):

> The common questions need not be dispositive of the entire action. In other words, "predominate" should not be automatically equated with "determinative." Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

(internal footnotes omitted). Here, questions regarding the production of carbon black, how it may be discharged into the environment, where it may go after such discharge, and what effect it has on property, among others, are clearly common to the claims of all Plaintiffs. Further, the legal theories on which the Plaintiffs rely are dependent on the same law. Thus, common questions of law and fact predominate. To the extent it becomes necessary to address damages issues on an individual basis, that issue may be resolved at a later date either through decertification of the class, the creation of subclasses, or other means.

Litigation of this matter as a class action is also superior to conducting individualized cases for each potential class member. Indeed, having hundreds of property owners file the same action against the same defendants for the same types of injury is a clear waste of judicial resources.

Thus, the Court finds Plaintiffs have met the requirements of Fed. R. Civ. P. 23(b)(3) and this matter will be certified as a class action.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Class Certification (Dkt. No. 123) is GRANTED in part. A class comprised of all Native American persons owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area, exclusive of governmental entities, defendants, and defendants' affiliates, parents, and subsidiaries, shall be certified pursuant to Fed. R. Civ. P. 23(b)(3). To the extent not limited by subsequent Order, that class may pursue claims for nuisance, trespass, failure to warn, unjust enrichment, diminution of property values, interference with use and enjoyment of land and discomfort and annoyance to the landowners, and punitive damages. Kalyn C. Free, Jason B. Aamodt, and Richard Casey Cooper are appointed as class counsel. Class counsel are directed, within thirty days of the date of this Order, to file their plan for providing the notice required by Fed. R. Civ. P. 23(c)(2).

IT IS SO ORDERED this 3rd day of January, 2007.


ROBIN J. CAUTHRON
United States District Judge

17