IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) |
| Defendants/Third Party Plaintiffs, | ) ) ) |
| vs. | ) ) |
| CONOCOPHILLIPS, a Corporation, | ) ) |
| Third Party Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendants Continental Carbon Company and CCC USA Corp. ("CCC") filed the present motion seeking dismissal of Plaintiffs Amended Complaint. CCC argues the amended pleading went beyond the scope of the Court's Order permitting the Amended Complaint and that Plaintiffs have failed to state a claim for relief as to several claims raised in the First Amended Complaint. In response, Plaintiffs argue they have precisely followed the limits of the Court's Order and that CCC's Motion is without merit.

1.  Motion to Strike

CCC argues that in the First Amended Complaint, Plaintiffs attempt for the first time to raise class-wide personal injury claims. In support, CCC notes that paragraphs 58-62 of the First Amended Complaint attempt to seek relief on behalf of the "medical

monitoring class." CCC argues these allegations are in contrast to those set forth in the original complaint. Plaintiffs argue there is no difference between the Complaints and that there is not now and never has been a "personal injury" class. Rather, Plaintiffs assert the personal injury allegations seek creation of a medical monitoring fund for themselves and other similarly situated persons. Plaintiffs' arguments in their brief cannot be squared with the plain language of the First Amended Complaint. Paragraphs 58, 59, 61, and 62 all assert claims on behalf of "the Medical Monitoring Class." See Dkt. No. 226, pp. 15-16. Plaintiffs' purported intent as argued in their response brief is overcome by the plain assertions in the First Amended Complaint. Because those assertions seek to assert claims that were not previously made and are beyond the scope of the Court's permission to amend, they must be stricken. CCC's motion will be granted on this point.[1]

In a related matter, CCC challenges Plaintiffs' assertion of a wrongful death claim on behalf of Annabelle Littlehoe. Plaintiffs argue the change is proper as "[w]hen a person dies while their personal injury claim is pending, it automatically becomes a claim for wrongful death." Dkt. No. 246, pp. 19-20. Plaintiffs' argument misstates Oklahoma law. As CCC notes, under Oklahoma law a claim for wrongful death is a separate claim. See 12 Okla. Stat. § 1053; see also Ouellette v. State Farm Mut. Auto. Ins. Co., 1994 OK 79, ¶ 8, 918 P.2d 1363, 1366. A wrongful death claim must be brought by the person authorized by the statute and is a claim brought for the benefit of that person. Id. at ¶ 9,

---

[1] Because CCC had filed a responsive pleading to the Complaint, any amendment by Plaintiffs requires leave of Court. See Fed. R. Civ. P. 15(a).

1366.  On the other hand, in certain instances, a personal injury claim may survive the death of the injured party and in that instance it is pursued on behalf of the estate of that party.  <u>See</u> 12 Okla. Stat. §§ 1051, 1052.  Whether or not Ms Littlehoe's action survives her death and therefore may continue for the benefit of her estate and whether or not Ms. Brown is a proper party to pursue a claim for wrongful death cannot be resolved on the pleadings before the Court.  However, it is clear that to the extent Ms. Brown seeks to pursue any surviving claims, she was required to seek substitution under Fed. R. Civ. P. 25, and to the extent she seeks to pursue a claim for wrongful death, she was required to seek leave of Court to join under Fed. R. Civ. P. 19 or 20.  As neither avenue was pursued, Ms. Brown's claim was improperly added to the First Amended Complaint and CCC's motion will be granted on this issue.

      CCC next complains of Plaintiffs' addition of 28 U.S.C. § 1345 as a potential basis to provide subject matter jurisdiction.  Plaintiffs argue that in the Court's July 13, 2006, Order, § 1345 was mentioned as a possible jurisdictional basis.  Plaintiffs assert that relying on that statement they referenced the statute in their First Amended Complaint.  Regardless of whether or not § 1345 would provide an additional basis for the Court's subject matter jurisdiction over this matter, the August 8, 2006, Order did not authorize Plaintiffs to amend the Complaint to include the statute.  Accordingly, its inclusion in the First Amended Complaint was improper and CCC's motion will be granted on this issue.

      CCC also complains of Plaintiffs' continued reliance on 28 U.S.C. § 1362, noting the Court has previously rejected the statute's applicability in this case.  Plaintiffs argue

the statute's continued inclusion is of no relevance as the Court's determination that it had jurisdiction based on 28 U.S.C. § 1332 renders the inclusion of an additional jurisdictional statute superfluous.  Plaintiffs assert they included the reference to the statute in the First Amended Complaint merely to preserve the issue for appeal.

Regardless of Plaintiffs stated basis for continuing to include reference to § 1362, the Court has previously ruled that that statute does not provide a jurisdictional basis for the Court to consider the claims raised by Plaintiffs.  CCC's motion will be granted on this issue.

2.  Motion to Dismiss

CCC asserts that certain of the claims raised in the First Amended Complaint fail to state a claim upon which relief may be granted.  Within the scope of this challenge are Plaintiffs' claims for failure to warn, federal common law claims for environmental injury, claims based on tribal law or custom, and Plaintiff Ponca Tribe's claim as *parens patriae*.

*A. Failure to Warn*

CCC argues that Oklahoma law does not recognize such a cause of action. According to CCC, Plaintiffs have failed to offer any authority imposing a duty to warn of pollution or contamination under the facts of this case.  Count IV of the First Amended Complaint asserts that CCC has created and released a pollutant which has harmed Plaintiffs and their property and, as a result, CCC has a duty to warn Plaintiffs of the dangers imposed by the release. In response to CCC's challenge, Plaintiffs assert this duty arises by virtue of a 1995 agreement between the Oklahoma Department of Environmental

4

Quality ("ODEQ") and a predecessor of CCC. Plaintiffs also argue that a duty to warn arises under Oklahoma statutes and/or Oklahoma common law.

Plaintiffs' reliance on the agreement with the ODEQ is unavailing. First, Plaintiffs' assertions in the First Amended Complaint fail to plead any suggestion that the agreement imposes an obligation on CCC to warn them. Further, in their response, Plaintiffs fail to offer any authority demonstrating that they may bring an action to enforce the agreement.[2] Plaintiffs' reliance on Oklahoma statutes as creating a duty to warn is equally ineffectual. The statutes referenced by Plaintiffs establish that certain actions allegedly committed by CCC would constitute pollution and/or a public nuisance and that the Executive Director of the ODEQ may enter an order requiring the cessation of such pollution. Neither the law nor the cases cited even remotely suggest an independent duty to warn. Finally, Plaintiffs' citation to Oklahoma cases, including those set forth in the supplemental briefing, which mention a duty to warn fails to establish the duty sought to be imposed here. Each of the examples offered by Plaintiffs illustrate that in certain instances the failure to warn may be an act of negligence and give rise to a right of recovery under the auspices of that tort. While it may be that the alleged wrongdoing of CCC would fall along a similar vein,[3] the allegations of Count IV of the First Amended Complaint, as they currently exist, do not assert a claim for negligence. CCC's motion will be granted on this issue.

---

[2] Even if such authority were provided, it seems clear that Plaintiffs' claim would be for breach of the agreement, not a failure to warn.

[3] To the extent CCC's failure to warn of the pollution could be challenged as negligent, the assertions in Count VI appear to be broad enough to give CCC fair notice of Plaintiffs' position.

*B. Federal Common Law*

CCC challenges Plaintiffs' reliance on federal common law as providing a basis for bringing their claims for environmental injury. Plaintiffs assert that CCC's challenge improperly seeks an advisory ruling from the Court, as the facts have not been sufficiently developed. Plaintiffs further assert that it is not yet possible to determine the various sources of law that may support their claims. The Court is unpersuaded by Plaintiffs' position. The time for determining whether or not a position has legal merit is before the Complaint is filed, not after. While it may be that as additional facts are uncovered additional avenues of recovery may arise, Plaintiffs have failed to demonstrate what additional facts they seek. What is clear is that this case is not appropriate for the application of federal common law. Plaintiffs' allegations in the First Amended Complaint assert only harm to their land; they fail to identify an issue touching on issues of federal concern or an issue affecting other states. Additionally, the Court's subject matter jurisdiction is based on diversity and there is no showing that Oklahoma law is inadequate to address the complaints.[4] Thus, creation of or application of federal common law would be incorrect. See Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641 (1981):

> [A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and

---

[4] Indeed, Plaintiffs have repeatedly cited Oklahoma law as providing the means of recourse for their complaints.

> international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases. In these instances, our federal system does not permit the controversy to be resolved under state law, either because the authority and duties of the United States as sovereign are intimately involved or because the interstate or international nature of the controversy makes it inappropriate for state law to control.

(internal footnotes omitted); see also McCord v. Dixie Aviation Corp., 450 F.2d 1129, 1131 (10th Cir. 1971):

> There is no showing by the appellants that there is a compelling federal interest justifying the application of the federal common law rule to fashion a cause of action in tort which would subject all owners and lessors of airplanes to damage judgments contrary to existing common law. We believe that to do so would constitute abusive judicial law-making.

Thus, CCC's motion will be granted on this issue.

*C. Tribal Law or Custom*

CCC argues that the Court lacks authority to interpret or enforce a tribal law or custom and therefore to the extent Plaintiffs assert such claims in the First Amended Complaint, those claims should be dismissed as they fail to state a claim. In response, Plaintiffs argue that CCC reads the Court's earlier comments regarding the tribal resolution too broadly. The Court agrees with Plaintiffs' recognition that the earlier Order addressed the sole question of whether or not a tribal resolution could provide a basis for subject matter jurisdiction. The Court found that it could not. The Court also agrees with CCC that several courts have held that a federal court may not interpret or decide questions of tribal law. However, it is clear that in certain circumstances, the Court must enforce a tribal judgment just as it would any other valid judgment. See Wilson v.

Marchington, 127 F.3d 805, 810 (9th Cir. 1997) ("In synthesizing the traditional elements of comity with the special requirements of Indian law, we conclude that, as a general principle, federal courts should recognize and enforce tribal judgments."). However, this principle does not mean that Plaintiffs have stated a valid claim seeking enforcement of the resolution, as nowhere in the First Amended Complaint do Plaintiffs make such a request. Rather, the sole reference to the resolution is found in paragraph 35 of the First Amended Complaint which merely states that such a resolution was passed.[5] Thus, it cannot be said that Plaintiffs have properly pleaded a claim for relief and CCC's motion will be granted on this issue.

### D. *Parens Patriae*

CCC argues that because the Court has ruled that the Tribe must pursue this action in its corporate entity rather than sovereign status, it cannot proceed under a *parens patriae* theory. Plaintiffs argue that even when acting as a corporate entity, the Tribe maintains at least a quasi-sovereign status and thus may proceed as *parens patriae*. In support of their position Plaintiffs direct the Court to a 1965 interlocutory order by the Indian Claims Commission wherein that entity stated that the Ponca Tribe could proceed in a representative capacity.

---

[5] If Plaintiffs are intent on pursuing a claim for enforcement of the resolution, the Court notes that the Supreme Court's decisions in Montana v. United States, 450 U.S. 544 (1981), and Nevada v. Hicks, 533 U.S. 353 (2001), and their progeny would pose a significant barrier to such a claim.

The Court finds it unnecessary to untangle this knot of *parens patriae* and sovereignty. It is clear from the allegations of the First Amended Complaint that the Tribe seeks redress on behalf of certain of its members. It is clear that those members could pursue the action individually if they so chose and that the Tribe has the right and is indeed obligated by its charter to protect its members in this fashion; consequently, the Tribe may bring this action as it has associational standing. See Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977):

> Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

The only roadblock to this approach is whether or not the Tribe seeks monetary damages on behalf of its members. See Warth v. Seldin, 422 U.S. 490 (1975). The allegations in the First Amended Complaint seek both monetary and injunctive relief on behalf of all Plaintiffs. Because the question of whether the Tribe seeks monetary relief does not raise a standing issue, see United Food & Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 554-55 (1996), it may be resolved at a later date. Thus, the Tribe may pursue this action on behalf of its members and CCC's motion will be denied on this issue.

## **CONCLUSION**

As set forth more fully herein, Defendants Continental Carbon Company and CCC USA Corp.'s Motion to Dismiss First Amended Complaint and to Enforce the Court's Order (Dkt. No. 239) is GRANTED IN PART. Plaintiffs' class-wide personal injury claims, wrongful death claim, and reliance on 28 U.S.C. §§ 1345 and 1362 are stricken from the Amended Complaint. Plaintiffs' claim for failure to warn and reliance on federal common law and/or tribal law or custom are dismissed. This matter shall proceed on the remaining claims.

IT IS SO ORDERED this 8th day of January, 2007.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge