IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) | |
| Defendants/Third Party Plaintiffs, | ) ) | |
| vs. | ) ) | |
| CONOCOPHILLIPS, a Corporation, | ) ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM OPINION & ORDER

A dispute has arisen regarding Defendant Continental Carbon Company's efforts to learn identifying information about Oklahoma citizens who filed complaints with the Oklahoma Department of Environmental Quality ("DEQ") from January 1, 1990, to the present about particulate matter or odors coming from its plant or a nearby refinery and who elected to designate their complaints as confidential. DEQ provided Data Complaint Forms it created on all complaints of that nature, in the area and during that time frame, but redacted the complainant's name, address, and location of those people who chose to make their complaints confidential. Many more unredacted forms were also produced from complainants who did not choose to remain confidential or anonymous.

Continental Carbon subsequently subpoenaed unredacted "confidential" Data Complaint Forms, to be produced by January 14, 2008. (Dkt. No. 330, Def.'s Ex. 10.) Counsel for DEQ made a timely written objection, relying on the discretionary authority provided to it by Oklahoma statute to protect a complaining person's identity when he or she has requested confidentiality. (Def.'s Ex. 11.)

On February 25, 2008, Continental Carbon filed a motion to compel, arguing that: the exception to the Oklahoma Open Records Act cited by DEQ does not create a privilege recognized at law; DEQ has waived any protection by partial disclosure; and DEQ cannot resist a valid subpoena based on state procedure. Plaintiffs and DEQ have responded. DEQ has also now moved to quash the subpoena. Having reviewed these filings and Continental Carbon's response and reply briefs, the Court denies the motion to compel and strikes the motion to quash as moot.[1]

Among other things, DEQ is responsible for processing, investigating, and tracking complaints regarding possible violations of environmental laws and regulations. 27A Okla. Stat. §§ 1-1-202, 1-1-204, 2-3-202 & 2-3-501. Violations of the Oklahoma Environmental Quality Code or DEQ requirements can result in criminal or civil penalties. Id. § 2-3-504. State regulations permit a person making a complaint to "request to be anonymous or to remain confidential." Okla. Admin. Code § 252:4-11-2(b). Of the 715 complaints within the area and time frame specified, 149 complaints from 57 complainants are designated as

---

[1]  The Court appreciates Plaintiffs' desire to be heard, but it bases its consideration of the issues entirely on the briefs of Continental Carbon and DEQ.

confidential and are now at issue.  (Dkt. No. 341, Third Party Resp. at 5-6 & 14.)  DEQ does

not seek to maintain the confidentiality of complaints made by parties to this action.

Federal Rule of Civil Procedure 45 authorizes a person to withhold subpoenaed

information under an express claim that it is privileged and to move to quash or modify a

subpoena that would require disclosure of privileged or other protected matter.

Fed. R. Civ. P. 45 (c)(2)(B), (c)(3)(A)(iii) & (d)(2)(A).  If an objection is made, "[a]t any

time, on notice to the commanded person, the serving party may move the issuing court for

an order compelling production . . . ."  Id. (c)(2)(B)(i).  Because DEQ objected to the

production of unredacted forms in written correspondence within 14 days of the subpoena's

service, it was timely, see id. (c)(2)(B), and its assertion of privilege is valid whether or not

the recent motion to quash was deemed so.  Thus, the Court will decide the issue based on

Continental Carbon's pending motion to compel.  And that requires the Court to determine

whether the statutory provision granting state agencies the discretion to withhold confidential

personal communications is cognizable as a privilege under the Federal Rules of Evidence.

See Fed. R. Civ. P. 26(b) (providing, in pertinent part, "Parties may obtain discovery

regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .")

Federal Rule of Evidence 501 states:

> Except as otherwise required by the Constitution of the United States
> or provided by Act of Congress or in rules prescribed by the Supreme Court
> pursuant to statutory authority, the privilege of a witness, person, government,
> State, or political subdivision thereof shall be governed by the principles of the
> common law as they may be interpreted by the courts of the United States in
> the light of reason and experience.  However, in civil actions and proceedings,
> with respect to an element of a claim or defense as to which State law supplies

the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Because Plaintiffs' causes of action are based on Oklahoma law and this Court's jurisdiction is based on 28 U.S.C. § 1367, see Dkt. No. 289, Amend. Compl., the Court must look to Oklahoma law to evaluate DEQ's assertion of privilege.

The statutory provision at the center of this dispute is 51 Okla. Stat. § 24A.14, which provides:

> Except for the fact that a communication has been received and that it is or is not a complaint, a public official may keep confidential personal communications received by the public official from a person exercising rights secured by the Constitution of the State of Oklahoma or the Constitution of the United States. The public official's written response to this personal communication may be kept confidential only to the extent necessary to protect the identity of the person exercising the right.

Environmental complaints made to DEQ, the governmental body charged with investigating and redressing such complaints, fall within the scope of this exception. See 1988 OK AG 79 at ¶¶ 12-18. Thus, the statute clearly permits DEQ to do what it has done, to protect the identity of complainants who chose to have their complaints designated as confidential.

However, again, the critical issue is whether this "statutory publication shelter," Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984), also operates as a shield to a proper discovery request. The Court finds that the exception does to the extent that it is coterminous with the common law informer's privilege. Compare Friedman, 738 F.2d 1336, 1344 (D.C. Cir. 1984) (explaining that Freedom of Information Act ("FOIA") exemptions are not per se privileges for purposes of discovery) with Culinary

Foods, Inc. v. Raychem Corp., 150 F.R.D. 122, 126 (N.D. Ill. 1993) (concluding that FOIA exemption paralleled common law informant's privilege and, after balancing need against policy considerations, refusing to compel disclosure of employee statements taken by the Department of Labor).

Under the informer's privilege, the government is entitled to refuse to disclose the identity of the person who furnished information relating to the investigation of a possible violation of law. Roviaro v. United States, 353 U.S. 53, 59 (1957). Oklahoma codified the informer's privilege in 12 Okla. Stat. § 2510(A):

> The United States, state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law to a law enforcement officer or member of a legislative committee or its staff conducting the investigation.

See also Robinson v. State, 1981 OK CR 107, ¶ 4, 634 P.2d 734, 737 (Cornish, J., concurring, explaining that the statute was constitutional and "substantially parallels the guidelines set down in Roviaro"). The privilege has a long history, see Fed. R. Evid. 501 advisory committee's note, and promotes reporting and communication from citizens that might otherwise fear reprisal, see Roviaro, 353 U.S. at 59.[2] It applies in civil cases, where

---

[2] DEQ also explains that protecting the identity of confidential complainants is particularly important here. It apparently relies heavily on the complaints program to discover statutory and regulatory violations and to take enforcement actions. (Third Party Resp. at 12.) DEQ also states that complaints are particularly important in cases of "fugitive dust violations." (Id.) In addition, DEQ contends that there is a legitimate risk of repercussion here because of the "very real possibility" that complainants are employees of Defendants or friends or neighbors of employees. (Id. at 13.) Finally, DEQ explains that if it is unable to protect complainants' identities with a "confidential" designation, then the majority of those complainants would elect to be anonymous, which in turn would not allow DEQ to stay in contact with those people. (Id. at 13-14.)

it "is arguably stronger [than in criminal cases], because the constitutional guarantees assured to criminal defendants are inapplicable."  In the Matter of the Search of 1638 E. 2nd Street Tulsa, Okla., 993 F.2d 773, 775 (10th Cir. 1993).

In this instance, DEQ's invocation of the personal communication exception did not exceed the scope of its common law informer's privilege.  "The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged."  Roviaro, 353 U.S. at 60.

However, the privilege itself is qualified:  it must give way out of fairness "'when the identification of the informant or of a communication is essential to a balanced measure of issues and the fair administration of justice.'"  1638 E. 2nd Street, Tulsa, Okla., 993 F.2d at 774 (like Friedman, 150 F.R.D. at 127, citing Dole v. Local 1942, IBEW, 870 F.2d 368, 372 (7th Cir. 1989)); see also Corbett v. State, 1974 OK CR 181, ¶ 10, 527 P.2d 200, 203 ("Whether disclosure is compelled in a particular case is a matter for the discretion of the trial court which must make its determination by balancing the policy reasons underlying the privilege against the defendant's right to prepare his defense.")  Once properly asserted, it is the burden of the party seeking discovery to show need.  See 1638 E. 2nd Street, 993 F.2d at 774.  "The government is entitled to assert the privilege without showing that reprisal or retaliation is likely."  Id.  Therefore, DEQ's claim of a privilege prevails unless Continental Carbon makes a showing that the information is not only relevant but also necessary to its defense and a fair adjudication of the claims against it.

6

In explaining the importance of discovering the redacted information, Continental Carbon states:

> The confidential information is clearly relevant.   The identity of the complainant is relevant for determining whether the complaint was credible and whether the complainant may hold other discoverable information about his or her complaint that may either support or contradict the DEQ Witnesses' testimony.  The location where a particular complaint originated and where DEQ investigated the complaint (site visit to the complainant's property) is relevant for showing the proximity of that location to [Continental Carbon's] Plant or [ConocoPhillip's] Refinery, which in combination with other evidence such as wind direction and scientific testing of any samples taken from the complainant's property or nearby may show the actual source of the deposited particulate matter air emissions.

(Dkt. No. 330, Def.'s Br. at 5-6.)  Based on the sampling of "confidential" complaint forms attached to Continental Carbon's brief, it appears that a redacted form contains a general description of location of the complaint and the investigator's determination of the responsible party.  It also contains "complaint information" and, presumably, other details of the investigation.[3]

Although an exact location of the complaint might be useful, the Court cannot agree that Continental Carbon's need outweighs the policy interests involved.   Importantly, Continental Carbon may question the DEQ investigators and has the benefit of other specific information about the confidential complaints.   Moreover, the confidential complaints comprise only about twenty percent of all relevant complaints.  And of those complaints,

---

[3] Continental Carbon attached the "first page" of several redacted Data Complaint Forms. (Def.'s Br. at 3 n.3.)  It is clear from the footers on those pages that additional pages exist, which presumably contain information related to the investigation.

only a portion involve black particulate matter having dusted on a property.  (See Third Party Resp. at 14.)  For these reasons, the Court finds that Continental Carbon has not carried its burden.[4]

Finally, Continental Carbon also argues that whatever privilege DEQ may have was waived.  Waiver clearly occurs when the underlying purpose of the privilege has been frustrated, such as when the identity of the informer has been disclosed.  See Roviaro, 353 U.S. at 60; 12 Okla. Stat. § 2510(C)(1).  However, that DEQ produced redacted confidential Data Complaint Forms, when the personal communications exception only required it to report that a complaint had been made and to provide a redacted response, is no waiver of DEQ's privilege.  First, the privilege from discovery is rooted in the evidentiary analog, not the statute.  And, second, the information released did not compromise the confidentiality of the complaint.  Nor is it clear how the release of substantive information, whether as coming from the initial complaint rather than simply from an official response, has prejudiced Defendants.  (See Dkt. No. 352, Def.'s Reply at 5.)

Likewise, DEQ's inadvertent disclosure of the identity of a single confidential complainant does not suggest wholesale waiver of its privilege.  Considering the number of complaints, the need to redact complaints by hand, and DEQ's explanation that the disclosure was in error (Third Party Resp. at 3-4 & 5 n.4), the Court finds that this limited disclosure does not defeat DEQ's assertion of privilege.  See also Fed. R. Civ. P. 26(b)(5)(b).

---

[4] Issues of admissibility and weight with respect to the incomplete "confidential" evidence obtained from DEQ may be addressed later when they can be evaluated in context.

In conclusion, the Court finds that DEQ has asserted a valid claim of privilege such that Continental Carbon Company's Motion to Compel the Oklahoma Department of Environmental Quality to Produce Certain Subpoenaed Documents (Dkt. No. 326) is DENIED.  The Oklahoma Department of Environmental Quality's Motion to Quash (Dkt. No. 342) is STRICKEN as moot.

IT IS SO ORDERED this 10th day of April, 2008.

ROBIN J. CAUTHRON
United States District Judge