# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE PONCA TRIBE OF INDIANS OF
OKLAHOMA, ET AL.,

          Plaintiffs,

v.

CONTINENTAL CARBON COMPANY, CCC
USA CORP., AND CHINA SYNTHETIC
RUBBER CORP.,

          Defendants,

v.

CONOCOPHILLIPS, A CORPORATION,

          Third-Party Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CIV-05-445-C

### THIRD-PARTY DEFENDANT CONOCOPHILLIPS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF JAMES MILLETTE

Pursuant to Rule 702 of the Federal Rules of Evidence, Third-Party Defendant ConocoPhillips moves the Court to exclude in part the report and testimony of Dr. James R. Millette, who has been proffered as an expert in this case by Defendants/Third-Party Plaintiffs Continental Carbon Company and CCC USA Corp. (collectively "CCC"). Dr. Millette is an environmental scientist and microscopist who purports to have experience in differentiating carbon black from other environmental particulates. Because key portions of his opinion either are not based on a reliable methodology or are, in fact, at odds with the standards Dr. Millette purports to follow, his proposed testimony on these issues is inadmissible and should be excluded by the Court.

{732630;}

## BACKGROUND

In April 2005, Plaintiffs filed this action against CCC and its parent company, China Synthetic Rubber Corporation ("CSRC"), alleging that emissions of carbon black from CCC's Ponca City, Oklahoma facility had damaged Plaintiffs' real and personal property and caused personal injuries to various Plaintiffs.  Plaintiffs allege that "[c]arbon black dust is very fine, black, and sticky.  It is difficult to wipe off or clean off of skin, and it is difficult to clean off of objects such as homes, buildings, children's toys, and cars."  (2d Am. Compl. ¶ 21, Dkt. No. 289.)  CCC subsequently filed a Third-Party Complaint against ConocoPhillips, contending that emissions from ConocoPhillips' Ponca City refinery (the "Refinery") had contributed to any damages incurred by Plaintiffs.  However, ConocoPhillips does not manufacture or produce carbon black, the substance of which Plaintiffs complain.  Therefore, CCC has attempted to identify substances that are present at the Refinery that CCC wishes to suggest are similar to carbon black.  In its efforts to shift liability to ConocoPhillips, CCC is expected to rely heavily upon the testimony of Dr. Millette, who has examined samples of particulate matter from the Ponca City area and contends that ConocoPhillips is responsible for most of the dark particulates found in that area.

## GENERAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court directed the trial courts to act as gatekeepers in excluding unreliable expert testimony. Therefore, before admitting expert testimony, a federal court must be satisfied that the expert's opinion is sufficiently reliable and helpful.  *See* Fed. R. Evid. 702 (authorizing admission of expert testimony if (a) the proffered expert is qualified "by knowledge, skill, experience, training, or education" and (b) the testimony will assist the trier of fact because "(1) the

2

{732630;}

testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case"). In exercising this gatekeeping function, the Court must "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Under Rule 104(a) of the Federal Rules of Evidence, the proponent of the expert has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

## ARGUMENT AND AUTHORITIES

I.     **Portions of Dr. Millette's Proposed Testimony Are Unreliable And Inadmissible.**

Under *Kumho Tire* and its predecessor, *Daubert*, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 782 (10th Cir. 1999)). This Court has noted that "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." *Transcontinental Ins. Co. v. Lemons*, 2007 WL 4856869, at *1 (W.D. Okla. Apr. 24, 2007) (quoting Fed. R. Evid. 702, advisory committee's note).

This Court has noted that "[i]n making a reliability determination, the Court may consider whether the opinion at issue can be or has been tested or subjected to peer review, the rate of error, the existence of standards controlling the technique, and the general acceptance of the methodology in the relevant scientific community." *Reed v. Smith & Nephew, Inc.*, 527 F. Supp.

3

{732630;}

2d 1336, 1342 (W.D. Okla. 2007); *see Transcontinental,* 2007 WL 4856869, at *1.   Applying

these factors, it is clear that two portions of Dr. Millette's testimony are inherently unreliable.

> **A.     Dr.  Millette's assignment of specific percentages of carbon black and other particulates in samples should be excluded.**

Dr. Millette has assigned specific percentages to the different types of particles contained

in the environmental samples he reviewed.   For example, he would conclude that a certain

sample contained 30 to 40 percent soil minerals, 50 to 60 percent soot, 17 percent "consistent

with carbon black," and one to ten percent of plant fragments.  (Dep. of James Millette at 59:8–

60:19, Exhibit A; *see, e.g., id.* at 54:11–55:11, 55:22–57:2, 62:2-24.)  Dr. Millette testified that

he assigned these percentages in order to "give an estimate of what the material is.  It's a semi-

quantitative value of how much is there."   (*Id.* at 54:15-20.)  However, he concedes that these

percentages are assigned based on "visual estimates" and that the rate of error for this type of

analysis is "about 30 percent."   (*Id.* at 501:8–502:7.)    Accordingly, he admitted that if he

attempted to reproduce the results of a certain analysis, then he would reach a different result 30

times out of 100.   (*Id.* at 503:13-19.)   Although Dr. Millette purports to adhere to Standard

D6602 of the American Society of Testing of Materials (the "ASTM Standard"), he concedes the

ASTM Standard does not specifically endorse the assignment of relative percentages of carbon

black.  (*Id.* at 525:9–526:8.)  Indeed, Dr. Harry Rook—whose testimony CCC has proffered in

support of  Dr.  Millette's  methodology  and  conclusions[1]—has  rejected  the  use  of  specific

percentages to quantify the amount of carbon black in a sample, concluding that "you cannot

quantify carbon black better than trace or none, zero to ten, ten to 30 and 30 to a hundred,

because the technique is not capable of that type of quantification."   (Dep. of Harry Rook at

---

[1] *See* Motion to Exclude the Expert Report and Testimony of Harry Rook, Dkt. No. 370.

{732630;}

120:21–121:1, Exhibit B.)  Accordingly, Dr. Millette's assignment of percentages finds no support in the relevant scientific community and should be excluded for lack of reliability.

**B.      Dr. Millette's testimony that regenerated catalyst is a darkening agent does not rest on a reliable foundation.**

This Court previously has noted that in making a reliability determination, a court should consider whether "the expert's testimony has grown out of independent research or if the opinions were developed for the litigation." *Morris v. Goodyear Tire & Rubber Co.*, 2004 WL 5522851, at *3 (W.D. Okla. Dec. 17, 2004) (citing Fed. R. Evid. 702, advisory committee's note).  Dr. Millette opines that regenerated catalyst such as that produced in ConocoPhillips' fluid catalytic cracking units ("FCCUs") is a darkening agent.  This is a textbook example of an opinion that clearly was formed to meet the exigencies of this litigation.

Dr. Millette concedes that he did not even begin looking for regenerated catalyst in the samples until after CCC brought its third-party claims against ConocoPhillips.  (Millette dep. at 70:25-71:15; *see also id.* at 95:12–96:11; 108:23–109:6.)  He further admits that he has never read any scientific peer-reviewed literature in which catalyst has been considered a darkening agent, nor has he authored any article containing this finding.  (*Id*. at 70:25-71:15; 272:18-273:1; 273:18-274:6.)  In fact, Dr. Millette wrote an article in 2006 (which was published in 2007) in which he purported to list a number of darkening agents and *excluded* any mention of catalyst:

Q:      Sir, I am going to hand you this and ask you to identify this for the record.

A:      This is a paper I co-authored in Journal of Environmental Forensics last year.

Q:      And it was published; right?

A:      That's correct.

Q:      What was it published in?

A:      Environmental Forensics Journals.

{732630;}

Q:      You talk about "Microscopic Investigation of Outdoor 'Sooty' Surface Problems;" correct?

A:      That's correct.

Q:      Do you list sooty catalyst as a sooty surface problem in this article?

A:      No, I do not.

Q:      Do you mention in this article anywhere that soot—that catalyst is a darkening agent?

A:      No.

(Millette Dep. at 274:9-25.)  Finally, Dr. Millette concedes that despite the hundreds of cases in which he has testified as an expert witness, he has never before reported that catalyst particles are a darkening agent.  (*Id.* at 325:25-326:22.)

Therefore, it is abundantly clear that Dr. Millette's opinion characterizing regenerated catalyst as a darkening agent was simply borne out of CCC's needs in this case.  Accordingly, it is does not contain the indicia of reliability that *Daubert* and Rule 702 demand.

## CONCLUSION

For the reasons set forth above, the Court should exclude the expert report and proffered testimony of Dr. James Millette on the topics discussed above.

6

{732630;}

Dated: June 16, 2008.

Respectfully submitted,


/s/ Amelia A. Fogleman
Oliver S. Howard, OBA No. 4403
Scott R. Rowland, OBA No. 11498
John Henry Rule, OBA No. 7824
David E. Keglovits, OBA No. 14259
Amelia A. Fogleman, OBA No. 16221

GABLEGOTWALS
100 West Fifth Street, Suite 1100
Tulsa, Oklahoma 74103-4217
Telephone: (918) 595-4800
Fax: (918) 595-4990

***Attorneys for Third-Party Defendant
ConocoPhillips***

7

{732630;}

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June, 2008, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jason Bjorn Aamodt
*jason@awlex.com*

David T. Buente
*dbuente@sidley.com*

Mista T. Burgess
*mista.turner-burgess@deq.state.ok.us*

Mark D. Coldiron
*mcoldiron@ryanwhaley.com*

Seth D. Coldiron
*scoldiron@ryanwhaley.com*

Richard Casey Cooper
*casey.cooper@cmw-law.com*

Thomas G. Echikson
*techikson@sidley.com*

Kalyn Cherie Free
*kfree@cwis.net*

Charles E. Geister, III
*cgeister@hartzoglaw.com*

Ragu-Jara Gregg
*rjgregg@sidley.com*

Keith J. Klein
*kklein@ryanwhaley.com*

Christin Ann DiMartino
*cdimartino@walterslaw.com*

Robert D. Nelon
*bnelon@hallestill.com*

8

{732630;}

Michael J. Novotny
*mnovotny@hartzoglaw.com*

Patrick R. Pearce, Jr.
*rpearce@ryanwhaley.com*

Kurt M. Rupert
*krupert@hartzoglaw.com*

Patrick M. Ryan
*pryan@ryanwhaley.com*

Andrea D. Stailey
*andrea.stailey@cmw-law.com*

C. Robert Stell
*stellc@crowedunlevy.com*

L. Mark Walker
*walkerm@crowedunlevy.com*

Lonny L. Walters
*lwalters@walterslaw.com*

Phillip G. Whaley
*pwhaley@ryanwhaley.com*

Christopher K. Woosley
*chris.woosley@cmw-law.com*

Will K. Wright, Jr.
*wkw@awlex.com*

/s/ Amelia A. Fogleman_____

9

{732630;}