IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) | |
| Defendants/Third Party Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CONOCOPHILLIPS, a Corporation, | ) ) | |
| Third Party Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

   Third-Party Defendant ConocoPhillips and Plaintiffs have filed separate motions to compel related to hundreds of documents that Defendant/Third-Party Plaintiff Continental Carbon Company has withheld under a claim of attorney-client privilege. Both request that the Court review the challenged documents *in camera* to determine if they are appropriately shielded from discovery. Although Continental Carbon does not object to an *in camera* review, it disagrees that its privilege assertions are unfounded.

   The documents in question are primarily e-mails and attachments from Continental Carbon officials to various others. According to ConocoPhillips, the documents fall into the following categories: (1) routine business communications or reports from a Continental Carbon representative to others in the organization as well as an attorney;

(2) communications between Continental Carbon, its public relations firm, and an attorney; and (3) miscellaneous others that may have no connection to any attorney. The number of documents at issue is somewhere between 300 and 700, depending on how the e-mails are organized and grouped.

Generally, civil litigants are entitled to review in discovery any matter that is relevant to the claim or defense and is not privileged. Fed. R. Civ. P. 26(b)(1). Because this is a diversity action, the Court applies Oklahoma law on attorney-client privilege. Frontier Refining, Inc. v. Gorman-Rupp Co., 136 F.3d 695, 699 (10th Cir. 1998); Fed. R. Evid. 501. Under Oklahoma law, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client": between a representative of the client and the client's attorney or a representative of the attorney; among attorneys representing the same client and/or the attorneys' representatives; between representatives of the client; or between the client and a representative of the client. 12 Okla. Stat. § 2502(B).

> Procedurally:
>
> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5). The party asserting the attorney-client privilege usually has the burden of proof to show that a privilege applies and that documents are protected from production. Sinclair Oil Corp. v. Texaco, Inc., 208 F.R.D. 329, 331 (N.D. Okla. 2002). Accordingly:

> A person claiming a privilege must prove that the conditions prerequisite to the existence of the privilege are more probably true than not. A person claiming an exception to a privilege must prove that the conditions prerequisite to the applicability of the exception are more probably true than not. If there is a factual basis to support a good faith belief that a review of the allegedly privileged material is necessary, the court, in making its determination, may review the material outside the presence of any other person.

12 Okla. Stat. § 2105(B). Although *in camera* inspection may be appropriate in certain situations, it is generally not the Court's responsibility to wade through reams of documents to determine whether the attorney-client privilege applies. See United Investors Life Ins. Co. v. Nationwide Life Ins. Co., 233 F.R.D. 483, 486 (N.D. Miss. 2006) (refusing to review hundreds of pages of documents and requiring the defendants to revise their privilege log); Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 642 (S.D.N.Y. 1991) (requiring detailed information on a privilege log to allow the court to appreciate the basis of the assertion).

The bulk of the challenged documents are e-mails sent from someone at Continental Carbon to others at Continental Carbon and an attorney. Based on the privilege log summary, it appears that many of those e-mails contain routine business information such as: resident complaints concerning Ponca City plant emissions; plant visits from the

Oklahoma Department of Environmental Quality ("ODEQ") and other ODEQ issues; stack testing; and equipment or personnel issues. The movants have produced Continental Carbon e-mails from the spring of 2004 evidencing an understanding by some employees, who were subsequently involved with the e-mails being withheld, that certain otherwise discoverable communications about plant operations could be protected from discovery if also sent to an attorney. The movants have also shown that some of these withheld documents are the kinds of reports and communications that were previously created or made but frequently not given directly to attorneys.

In response, Continental Carbon contends that its employees' obvious misunderstanding of the evidentiary privilege is not important. Instead, they argue that current counsel has reviewed all of the withheld documents because they contained an explicit or implicit request for legal advice. In support of its implicit request argument, Continental Carbon points to the growing litigation and regulatory threat that existed at the time related to Ponca City plant emissions. (Dkt. No. 477, CCC's Resp. at 4; Dkt. No. 471, Pls.' Mot. Ex. 3-A, Mar. 19, 2007, Ltr.) Thus, it explains that reports that previously were routinely generated were thereafter forwarded to an attorney (as well as a limited group of other employees) as "a necessary part of a continuous effort to keep the attorneys, as well as management, informed of the developing situation so the attorneys could provide legal advice from time to time, which they did." (Mar. 19, 2007, Ltr. at 4.) Furthermore, Continental Carbon observes that many of the documents, like resident complaints and

ODEQ inspections, by their very nature implicate legal or regulatory concerns. There is no dispute that the information contained in these communications is relevant to the claims at issue in this case. The sole objection to discovery is that those communications may be privileged.

By and large, Continental Carbon's response to the challenges related to the operational reports and communications misses the point. It is certainly correct that it is ultimately current counsel's responsibility to determine whether an assertion of attorney-client privilege is appropriate with respect to particular documents. However, the then-existing understanding of those within Continental Carbon who were making or directing the making of these communications is certainly not irrelevant. With respect to those documents that contain no explicit request for legal advice or reference to an attorney's review and to which there is no legal advice or strategic response from an attorney, the Court finds that Continental Carbon has not carried its burden of establishing that an attorney-client privilege applies. Continental Carbon representatives may have thought it prudent to consult attorneys concerning what it considered looming legal and regulatory problems, but there is no evidence linking specific requests for legal advice to the broad range of apparently routine matters discussed among Continental Carbon employees. See United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998) (observing lack of "credible evidence" that communications related to legal advice or strategy); Motley v. Marathon Oil Co., 71 F.3d 1547, 1551 (10th Cir. 1995) (identifying attorney's affidavit and deposition

testimony and lack of contradicting evidence as basis of factual determination that the purpose of communications was for providing legal advice).  There is, however, evidence that a policy or practice was initiated in early 2004 that documents on these topics would be sent an attorney for the purpose of shielding them from discovery in pending or future cases.  "[T]here is general agreement that the protection of the privilege applies only if the *primary* or *predominate purpose* of the attorney-client consultation is to seek legal advice or assistance."  1 Attorney-Client Privilege in the U.S. § 7:5 (2d ed. 2008) (emphasis in original).

All parties also agree that merely involving an attorney in a communication does not automatically cloak that communication with the protection afforded under § 2502(B).  The fact that some of these communications, such as those concerning resident complaints or ODEQ inspections, relate to facts that are at issue here is also not determinative.  The facts themselves are clearly discoverable.  The communications containing those facts are as well unless they were made for the purpose of facilitating the rendition of legal advice.  Again, it is the latter prerequisite that Continental Carbon has failed to establish to be more likely the case than not.  There is simply no way, without more, to distinguish implicit requests for legal advice from that which was merely informational or purely tactical.  And even if that line could be drawn with any degree of accuracy, it likely would not matter: "When a document is created for simultaneous review by both legal and nonlegal personnel, for both legal and nonlegal purposes, it will likely not be construed as having

the 'primary purpose' of obtaining . . . legal advice." Id.  Continental Carbon has *not* suggested that the employee recipients of these e-mails did not need these communications to perform their jobs but only to remain abreast of legal concerns and implications.  Under these circumstances, there is nothing to be gained from the Court's review of such documents.

Accordingly, Continental Carbon is ordered to produce those documents that it contends include implicit requests for legal advice or were transmitted to an attorney as part of a plan to keep counsel generally apprised of plant happenings–because it has failed to offer proof (as opposed to unsupported speculation) that each communication was primarily made for the purpose of facilitating the rendition of professional legal services.  In contrast, the Court finds Continental Carbon's assertion of privilege sound with respect to documents that contain an explicit request for legal advice or for which there is evidence that a response of legal advice was given.  Continental Carbon is to revise its privilege log to clearly indicate that such documents continue to be withheld due to circumstances described above and to provide redacted documents if appropriate.

The next point of contention relates to communications between Continental Carbon and its public relations firm, Pennino and Associates, that also included counsel. Continental Carbon contends that the withheld e-mails either relate to public relations aspects of its overall legal strategy or concern a public relations issue on which legal advice was being sought. (CCC's Resp. at 18.)  It is not clear from the privilege log summaries,

or even Continental Carbon's Response, that each of the questioned e-mails could be characterized as a communication made for the purpose of facilitating the rendition of legal advice. And Continental Carbon apparently does not contend that its relationship with Pennino and Associates was qualitatively or functionally different from a company's typical relationship with a third-party public relations firm. Cf. In re Copper Mkt. Antitrust Litig., 200 F.R.D. 213, 218-19 (S.D.N.Y. 2001) (describing public relations firm to have been a functional equivalent of client employee under the circumstances). Even if it did, there is simply no basis in the record from which to find that Pennino and Associates was a "representative" of Continental Carbon for purposes of § 2502. There is no evidence that Pennino and Associates was the functional equivalent of a Continental Carbon employee, cf. FTC v. GlaxoSmithKline, 294 F.3d 141, 148 (D.C. Cir. 2002), or that it provided a necessary "translator" function enabling counsel to provide necessary legal advice, see Calvin Klein Trademark Trust v. Wachner, 198 F.R.D. 53, 54 (S.D.N.Y. 2000). Accordingly, the motions to compel are granted with respect to these documents.

Finally, the parties identify a handful of miscellaneous documents allegedly privileged. Several of those are attachments to e-mails dispersed from a Continental Carbon employee to other employees as well as to an attorney. Those attachments are subject to no greater protection that their accompanying e-mail. Continental Carbon is to handle those in the same manner as directed above or to apprise the requesting parties and the Court why such treatment is inappropriate.

Continental Carbon also objects that an e-mail from the corporate Safety, Health and Environmental Affairs ("SHEA") director to consulting microscopists and an attorney is privileged. Federal Rule of Civil Procedure 26(b)(4) protects a specially-retained non-testifying expert from having to disclose facts known or opinions held by the expert, absent a showing of exceptional circumstances. According to ConocoPhillips, Continental Carbon has voluntarily produced sampling results from these two microscopists. The Court will review the documents identified in tab 1082 and tab 1332 *in camera*.

The last issue to be addressed is an e-mail from the corporate SHEA director to a consulting microscopist and copied to others in Continental Carbon and an attorney. The Court will review this e-mail (contained in the redacted portion of tab 1332) *in camera* as well.

Plaintiffs have also requested sanctions. Federal Rule of Civil Procedure 37(a)(5) provides for the recovery of reasonable expenses if a motion to compel is granted. The Court is satisfied that the movants conferred with Continental Carbon in good faith to obtain discovery without court action, that Continental Carbon's nondisclosure of the bulk of the withheld documents was substantially unjustified, and that an award of expenses would not be unjust. See Fed. R. Civ. P. 37(a)(5)(A). The parties have until October 8, 2008, to agree on an award of costs and attorneys' fees associated with the motions to compel. If no agreement can be reached, Plaintiffs and ConocoPhillips are instructed to provide evidence of the reasonable expenses each incurred in bringing their motions to

compel on or before October 28, 2008. Those statements should allow the Court to apportion the expenses after making a final ruling on the documents to be reviewed *in camera* and reviewing Continental Carbon's revised privilege log. Id. 37(a)(5)(C).

### CONCLUSION

Accordingly, ConocoPhillips' Motion to Compel Discovery (Dkt. No. 470) and Plaintiff's [sic] Motion to Compel (Dkt. No. 471) are GRANTED in part. Continental Carbon is ORDERED to produce withheld documents, provide a revised privilege log, and submit requested documents *in camera* as detailed above by October 1, 2008.

IT IS SO ORDERED this 18th day of September, 2008.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge