IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case Number CIV-05-445-C ) |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) |
| Defendants/Third Party Plaintiffs, | ) ) |
| vs. | ) ) |
| CONOCOPHILLIPS, a Corporation, | ) ) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Continental Carbon retained Dr. Louis Wilde as an expert in the field of real estate economics to perform several statistical analyses to assess whether its particulate emissions caused any diminution in the value of class properties. Plaintiffs argue that opinions based on his hedonic regression analysis should be excluded because he previously admitted that he could not conduct such an analysis and that his attempt to do so misuses data to produce a meaningless result.

### STANDARD

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education,

>may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Court must act as a "gatekeeper" in admitting or excluding proposed expert testimony, but has discretion in how it conducts that function. Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003). The proponent of the expert has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. Fed. R. Evid. 702 advisory committee's note.

Gatekeeping requires a two-part inquiry into the proposed expert testimony. Bitler v. A.O. Smith Corp., 391 F.3d 1114, 1120 (10th Cir. 2004). First, the Court must determine if the expert's proffered testimony has "'a reliable basis in the knowledge and experience of his or her discipline.'" Id. (citation and brackets omitted). The Court must make a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, which requires the Court to examine whether the reasoning or methodology underlying the testimony is scientifically valid and applicable to the particular set of facts. Id.; Dodge, 328 F.3d at 1222. Second, the Court must inquire whether the proposed testimony is sufficiently relevant, meaning that there is a logical relationship between the evidence proffered and the material issue that evidence is supposed to support. Bitler, 391 F.3d at 1121.

**DISCUSSION**

**A.     Expert Report**

Dr. Wilde is an economist who has experience determining whether contamination has had effects on real estate values and, if so, how much. He concluded that emissions from the plant may have affected some nearby properties but that they had no systemic effects on class properties within the areas immediately surrounding the ConocoPhillips plant, Ponca City as a whole, or the class area.

Dr. Wilde referred to recent resident complaints registered with ConocoPhillips and Continental Carbon respectively to configure two "zones" to reflect the primary geographical scope of the complaints for each company. (Report at 23.) He created multiple test areas–(1) the ConocoPhillips zone, (2) the portion of the Continental Carbon zone that overlapped with the ConocoPhillips zone, (3) a set of test areas based on estimates of average annual concentrations of particulate matter deposited on local properties by ConocoPhillips and Continental Carbon, and (4) the class area. (Id. at 24.) He then performed different analytical modeling. He reported the results of Neighborhood Comparison Analysis (that identifies a test or potential impact area and one or more control or unimpacted areas and compares the average sales price and average sales price per square foot of living space between the test and control areas over time) and Hedonic Regression Analysis ("HRA") (that uses multi-variable statistical techniques to adjust property values for factors in addition to square footage of living space before evaluating whether there is any potential property

value diminution in the test area as compared to the control areas) for two models and only the HRA in the remaining two.

### B.     Plaintiffs' Motion

Plaintiffs argue that Dr. Wilde previously stated that no analysis could be performed to calculate class-wide damages. They cite generally to a 22-page declaration filed during the class certification dispute in 2006. Continental Carbon contends that the ability to determine whether there has been a systemic property value effect is distinct from an ability to determine that a particular company's pollution is the cause. (Dkt. No. 420, Continental Carbon's Resp. at 6.) The Court finds that Plaintiffs have failed to specifically identify where and how Dr. Wilde's opinions have changed and articulate a basis for exclusion.

Plaintiffs also contend that Continental Carbon's president agreed to a settlement for diminution of property. The Court finds that neither the actions nor comments of a Continental Carbon executive related to damages indicate that Dr. Wilde's analysis is unreliable or untrustworthy.

Finally, Plaintiffs complain that Dr. Wilde selectively used data to reach a conclusion that he would not have had he considered all the data. Plaintiffs contend that Dr. Wilde's use of a ConocoPhillips zone and a Continental Carbon zone do not encompass all complaints. Dr. Wilde's zones are focused on where the concentration of complaints came from and did not necessarily include outliers. (Dep. at 267.) Dr. Wilde did not do any statistical analysis to determine what percentage of complaints would be considered outliers. (Id. at 267-68.) Instead, he explained that mapping the location of the complaints made the concentrations

he relied on obvious. He explained that he could "push" the boxes out somewhat to include one or more outliers without dramatically changing the results but that to include all complaint locations such that the zones were all of Ponca City would render his analysis meaningless. (Id. at 270-71.)

Dr. Wilde clearly did not use all complaint locations to construct those two zones, but his explanation for why his analysis depends on concentrations of complaints is reasonable. Plaintiffs do not cite to any other source that might suggest that such treatment is improper or introduces a bias. Therefore, the Court finds that Dr. Wilde reliably applied accepted principles in his field when he constructed these zones.

## CONCLUSION

Accordingly, Plaintiffs' Daubert Motion (Dkt. No. 395), as it relates to the expert report and proposed testimony of Dr. Louis Wilde, is DENIED.

IT IS SO ORDERED this 9th day of December, 2008.

ROBIN J. CAUTHRON
United States District Judge