IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case Number CIV-05-445-C |
| CONTINENTAL CARBON COMPANY, et al., | ) ) ) ) |
| Defendants/Third Party Plaintiffs, | ) ) |
| vs. | ) ) |
| CONOCOPHILLIPS, a Corporation, | ) ) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant China Synthetic Rubber Company's ("CSRC") motion for summary judgment. (Dkt. No. 387.) CSRC is a Taiwanese corporation that manufactures and sells carbon black. On May 25, 1995, CSRC entered into an Asset Purchase Agreement ("the Agreement") with Witco and Witco-Continental (also known as Continental Carbon Company) to purchase Continental Carbon Company which at that time operated the carbon black facility in Ponca City, Oklahoma, that is the subject of this litigation. Under the terms of the Agreement, closing would occur on June 30, 1995, and CSRC was permitted to assign all of its rights to the Agreement prior to that date. On June 29, 1995, CSRC did in fact assign its rights under the Agreement to Concarb Acquisition Corp (currently known as Defendant Continental Carbon Company, or "CCC"). The Agreement closed on June 30,

1995. All of CCC's stock is held by CCC USA Corp., a holding company. CSRC owns two-thirds of the stock in CCC USA Corp., with the remaining one-third held by Taiwan Cement Corporation.

Plaintiffs sued both CCC and CSRC in the present litigation. Plaintiffs base their allegations against CSRC on three different theories: (1) CSRC can be held directly liable for its own acts that harmed Plaintiffs; (2) CSRC can be held liable because CCC is simply its alter ego or instrumentality; and (3) CSRC can be held liable because CCC acted as its agent and thereby harmed Plaintiffs.

Initially, CSRC argues that it cannot be held liable as the alter ego of CCC under Oklahoma law. According to CSRC, while there are links between the two companies, such is expected in a parent-subsidiary relationship. Both companies have separate boards of directors and maintain separate finances. According to CSRC, both companies have different financial auditors, file income taxes separately, and do not loan money to each other or otherwise commingle their finances. They both follow typical corporate formalities and hold separate board meetings. While CSRC performs specified services for CCC, receiving in return 0.75% of CCC's yearly net sales, such an agreement is not unusual in the parent-subsidiary context. As a result, veil piercing is not appropriate in this situation.

CSRC also argues that it cannot be held directly liable for its own control over CCC. Initially, CSRC notes that it is preposterous to argue that a corporation located in Taiwan could operate or control the daily operations of a plant located in Oklahoma. Next, CSRC maintains that Plaintiffs do not have standing to rely upon the Agreement between CSRC,

Witco, and Witco-Continental with respect to the purchase of CCC. CSRC also argues that the terms of the Agreement indicate that CSRC was purchasing only Witco's assets, not its liabilities. Finally, because Concarb performed its obligations to Witco under the Agreement, there is no basis for holding CSRC liable. In its reply (Dkt. No. 468), CSRC argues that there is no basis for Plaintiffs' claim that it can be held liable under an agency theory as CCC's principal.

## STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party. Id. The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" Scott v. Harris, 550 U.S. 372, ___, 127 S.Ct. 1769, 1774 (2007) (quoting United States v. Diebold,

Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Const. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court went on to explain that, in this situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

## ANALYSIS

*1. Direct Liability Claim*

Plaintiffs brought claims against CCC and CSRC for trespass, private nuisance, public nuisance, personal injury and wrongful death, negligence, medical monitoring, and unjust enrichment stemming out of emissions from CCC's plant in Ponca City, Oklahoma. Plaintiffs initially claim that CSRC is directly liable for this harm based on its own actions. CSRC argues that it would be impossible for it to control from Taiwan the operations of a plant located in Ponca City, Oklahoma.

A corporation, just like an individual, can be held liable for both the intentional and negligent torts that it commits. Johnston Fife Hat Co. v. Nat'l Bank of Guthrie, 1896 OK 17, ¶ 11, 44 P. 192, 195 (quoting First Nat'l Bank v. Graham, 100 U.S. 699, 702 (1879)). It is

further recognized that a parent corporation can be held liable for its negligent actions when it chooses to render services to or on behalf of its subsidiary where such action constitutes performance of a duty owed by the subsidiary to third parties. Restatement (Second) of Torts § 324A and cmt d (1965); <u>Luckett v. Bethlehem Steel Corp.</u>, 618 F.2d 1373, 1382 (10th Cir. 1980). This is in essence direct liability, premised on the actions of the parent corporation rather than imputing liability to the parent for the subsidiary's actions. Corporations, just like individual landowners, have a duty to exercise reasonable care in the use of their land in order to prevent harm to surrounding landowners. <u>Young v. Darter</u>, 1961 OK 142, ¶ 17, 363 P.2d 829, 833 (<u>citing</u> 2 C.J.S. Adjoining Landowners § 46). And, as Plaintiffs note, "all persons who participate in a pollution are jointly and severally liable." <u>Magnolia Petroleum Co. v. Dexter</u>, 1936 OK 328, ¶ 2, 57 P.2d 1155, 1156. Therefore, should a jury find from the evidence presented that CSRC undertook to make decisions regarding repairs to be conducted at CCC's Ponca City plant, and these repairs, or lack of repairs, caused the damages of which Plaintiffs complain, then CSRC could be held directly liable for its own action or inaction under any of the theories pleaded by Plaintiffs.

According to the evidence submitted by Plaintiffs, a jury could in fact make this determination. It appears that daily and weekly reports were sent to CSRC by CCC's Ponca City plant discussing production levels and any problems that occurred, indicating that CSRC was well aware of any environmental hazards posed by CCC in Ponca City. (<u>See</u> Dkt. No. 441, Ex. 7 at 201-02.) There is documentation indicating that CSRC had to approve any capital expenditures by CCC that exceeded $200,000. (<u>See</u> Dkt. No. 441, Ex. 18.) This

would have an impact on environmental repairs made by CCC, essentially giving CSRC the power to make the final decision about whether certain repairs should be made. (See Dkt. No. 441, Ex. 7 at 220-23; Dkt. No. 441, Ex. 20; Dkt. No. 441, Ex. 31 at 136.) It is clear that Plaintiffs have submitted evidence indicating that a question of fact exists with respect to the actions taken by CSRC, and summary judgment is therefore inappropriate on this claim.[1]

*2. Alter Ego and Agency Claims*[2]

Plaintiffs also argue that CSRC could be held liable under either an alter ego or agency theory. "Corporations are distinct legal entities, and generally one corporation will not be held responsible for the acts of another." Gilbert v. Sec. Fin. Corp. of Okla., Inc., 2006 OK 58, ¶ 22, 152 P.3d 165, 175. In order for an agency relationship to exist between two corporations, they must agree that one is to act for the other. McGee v. Alexander, 2001 OK 78, ¶ 29, 37 P.3d 800, 807. In addition, the principal must have "some degree of control over the conduct and activities of the agent." Id. Agency relationships can be formed either expressly through a contract or they can be implied from the actions of the parties. 3 Am.

---

[1] The Court finds it unnecessary to address CSRC's arguments with respect to the Agreement between CSRC, Witco, and Witco-Continental. Regardless of whether CSRC assumed any environmental liabilities under the Agreement that it retained after assigning the contract to Concarb, CSRC could potentially be liable as a result of its direct actions with respect to conditions at CCC's Ponca City plant.

[2] The Court combines the analysis for these two claims because they are related. Also, should the jury find that CCC is either the alter ego or the agent of CSRC, the same result would be reached, namely that CSRC would be held liable for the actions of CCC. Frazier v. Bryan Mem'l Hosp. Auth., 1989 OK ¶ 16, 775 P.2d 281, 288. Additionally, the Court notes that many times the terms "alter ego" and "agent" are used interchangeably by courts to discuss the same relationship. See Id.; see also Restatement (Second) of Agency § 14M reporter's notes.

Jur. 2d Agency §§ 15-16. If an agency relationship exists, then the principal can be held liable for the agent's torts as long as they are within the scope of the agent's employment and while the agency relationship exists. Id. at § 264. If outside these parameters, liability can occur if the principal directed the act. Id.

Additionally, if one corporation is the alter ego or mere instrumentality of another, the legal entities should be disregarded and the corporations treated as the same. Frazier v. Bryan Memorial Hosp. Authority, 1989 OK 73, ¶ 16, 775 P.2d 281, 288. In such situations, "where the corporate entity is used to defeat public interests by protecting fraud, defending crime, or perpetration of other wrong," courts will pierce the corporate veil and hold the parent corporation liable for the acts of its subsidiary. Mainord v. Sharp, 1977 OK CIV APP 29, ¶ 7, 569 P.2d 546, 548. In Oklahoma, a variety of factors are considered in determining whether to pierce the corporate veil:

> whether 1) the parent corporation owns all or most of the subsidiary's stock, 2) the corporations have common directors or officers, 3) the parent provides financing to its subsidiary, 4) the dominant corporation subscribes to all the other's stock, 5) the subordinate corporation is grossly undercapitalized, 6) the parent pays the salaries, expenses, or losses of the subsidiary, 7) almost all of the subsidiary's business is with the parent or the assets of the former were conveyed from the latter, 8) the parent refers to its subsidiary as a division or department, 9) the subsidiary's officers or directors follow directions from the parent corporation and 10) legal formalities for keeping the entities separate and independent are observed.

Frazier, 1989 OK 73, ¶ 17, 775 P.2d at 288.

Plaintiffs have submitted evidence supporting many of these factors. CSRC owns two-thirds of CCC's stock. Currently two of the three directors on CCC's board are also on

CSRC's board of directors. While CSRC does not appear to provide much financing to CCC, it does guarantee numerous credit lines for CCC. (See Dkt. No. 441, Ex. 32.) Though there is no evidence that CSRC refers to CCC as a division or a department, CSRC advertising does not clearly specify that CCC's plants are separate and distinct from those owned by CSRC. According to this advertising material, CSRC's "global presence" includes seven plants worldwide. (See Dkt. No. 441, Ex. 37.)

The overwhelming majority of the evidence submitted by Plaintiffs indicates that a jury could find that CCC follows directions given by CSRC. From a document entitled "RFE Procedure," it appears that all of CCC's capital expenditures exceeding $200,000 must first be approved by CSRC's board of directors. (See Dkt. No. 441, Ex. 18.) A large number of CCC's loans appear to have been made by banks located in Taiwan, CSRC's place of incorporation, which could lead a jury to conclude that CSRC has control over CCC's finances. (See Dkt. No. 441, Ex. 31 at 193-201.) CSRC has an interest in the environmental issues posed by CCC's plants, and seems to provide guidance and oversight in that area. Evidence indicates continued communication between the two companies regarding maintenance issues at CCC's Ponca City plant. CCC sent RFE's to CSRC, requesting money to replace certain pieces of equipment that were posing environmental hazards, and on at least one occasion was turned down. (See Dkt. No. 441, Ex. 31 at 136.) In many instances, it appears that CSRC ultimately decided whether repairs should be made. (See Dkt. No. 441, Ex. 7 at 220; Dkt. No. 441, Ex. 20.) An email sent from one CCC employee to another in 2003 indicates that "CCC is still in the doghouse for our performance shortfalls, and this is

8

now beginning to manifest itself as more CSRC oversight and control, beginning with capital projects." (Dkt. No. 441, Ex. 23.)

All of this evidence, if believed by a jury, could lead to a determination that CCC operates merely as the alter ego or agent of CSRC. This is not simply a case where one corporation owns all of the stock in another corporation, or where two corporations share officers or directors. A variety of other factors exist, disclosing a real question of fact that should be submitted to the jury. The Court therefore finds that summary judgment is inappropriate and CSRC's motion for summary judgment (Dkt. No. 387) is DENIED.

IT IS SO ORDERED this 11th day of December, 2008.

ROBIN J. CAUTHRON
United States District Judge