IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE PONCA TRIBE OF INDIANS OF OKLAHOMA, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case Number CIV-05-445-C<br>) |
| CONTINENTAL CARBON COMPANY, et al., | )<br>)<br>) |
| Defendants/Third Party Plaintiffs, | )<br>) |
| vs. | )<br>) |
| CONOCOPHILLIPS, a Corporation, | )<br>) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Continental Carbon Company (CCC) filed a motion in limine seeking to exclude evidence concerning other litigation.[1] There are five different cases, or groups of cases, that CCC seeks to exclude: (1) a lawsuit filed in federal court against CCC regarding its carbon black plant in Phenix City, Alabama (the Alabama case); (2) a lawsuit filed in Alabama state court regarding CCC's Phenix City plant (the Riley case); (3) a lawsuit filed in state court in Kay County, Oklahoma, regarding CCC's Ponca City plant (the City case); (4) a lawsuit filed by CCC against ConocoPhillips (COP) in Oklahoma County; and (5) seven state court lawsuits filed in Kay County, Oklahoma, regarding CCC's Ponca City plant (the Walters

---

[1] China Synthetic Rubber Corporation (CSRC) also filed a motion in limine seeking to exclude evidence of the same litigation. It adopted CCC's arguments in their entirety. For the sake of convenience, the Court will address both motions in this order.

cases). CCC argues that such evidence is irrelevant, its probative value is outweighed by the risk of prejudice, it constitutes inadmissible character evidence, and that evidence of settlements should be excluded. Additionally, CCC raises hearsay concerns with respect to some of the evidence.

Both Plaintiffs and COP filed responses. Plaintiffs' response indicates that they only intend to offer evidence relating to the Alabama case and the City case. COP's response indicates that it only intends to offer evidence regarding the Alabama case. Accordingly, the Court will only consider CCC's motion as it relates to those two cases.

## DISCUSSION

*1. The Alabama Case*

The Court finds that the Alabama case is relevant to the present claims and defenses between the parties. It was filed in 2001 and a verdict was rendered in August 2004, just eight months before this case was filed. Both plants are owned by CCC, and evidence indicates that many policies and decisions that were made affected both plants. Therefore, the Alabama case is relevant to both CCC's and CSRC's intent as well as their business plans. Evidence of what entity paid the resulting judgment is also relevant to Plaintiffs' alter ego claim.

While CCC argues that such evidence is inadmissible with respect to Plaintiffs' punitive damages claim, the Court disagrees. Punitive damages are intended to further a state's legitimate interest in punishing unlawful conduct and preventing its future occurrence. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 562 (1996). There are limits to a punitive

damages award, however.  According to Supreme Court precedent, "[t]he Due Process Clause of the Fourteenth Amendment prohibits a State from imposing a 'grossly excessive' punishment on a tortfeasor."  Id.

It is problematic when one party seeks to introduce evidence of out-of-state conduct in support of its claim for punitive damages.  "[A] State may not impose economic sanctions on violators of its laws with the intent of changing the tortfeasors' lawful conduct in other States."  Id. at 572.  However, out-of-state conduct is admissible to show the deliberateness and reprehensibility of a tortfeasor's conduct, so long as "the conduct in question replicates the prior transgressions."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 423 (2003); Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1253 (10th Cir. 2000).

The Court finds that, as long as Plaintiffs' proof presented at trial indicates that the conduct undertaken by CCC (and perhaps CSRC) with respect to the Ponca City plant replicates their conduct with respect to the incidents giving rise to the Alabama case, then such evidence will be admissible to support Plaintiffs' claim for punitive damages.  However, the Court may limit such evidence to the extent that it is cumulative or unduly time-consuming.

While CCC argues that such evidence is inadmissible character evidence, the Court disagrees.  If the evidence is being offered for some purpose other than to show character in conformity with prior action, then it is admissible if, after performing the balancing test provided in Federal Rule of Evidence 403, the probative value of the evidence is not

3

outweighed by the danger of prejudice. 22 Charles Alan Wright, et al., Federal Practice and Procedure: Evidence § 5240.

Evidence concerning the Alabama case may be admissible on COP's defense of CCC's contribution claim. Under Oklahoma law, "[t]here is no right of contribution in favor of any tort-feasor who has intentionally caused or contributed to the injury or wrongful death." 12 Okla. Stat. § 832(C). Contrary to CCC's arguments, there does not appear to be precedent requiring intent to be an element of the alleged tort in order for this exception to apply. The cases cited indicate that courts may not infer intentional conduct from the fact that punitive damages were awarded for "wilful and wanton conduct." It appears, however, that COP is entitled to present evidence in an effort to demonstrate that CCC acted intentionally, even though intent may not be a specific element of Plaintiffs' claims.

With respect to whether this evidence is admissible to demonstrate intent, planning, and knowledge, the Court finds that it is not admissible to show that, because CCC was found liable in Alabama and the same activities are occurring here, CCC is most likely the source of the black dust in Ponca City. This is nothing more than an attempt to use evidence of other wrongs to prove character, and is therefore prohibited under Rule 404(b). However, such evidence could be admissible to demonstrate CCC's intent or knowledge of possible pollution in Ponca City. There was a final verdict rendered by a jury in the Alabama case, and it was handed down eight months before this case was filed. At that point, CCC and CSRC were put on notice regarding the types of harm that occurred due to their activities. While some of the conduct of which Plaintiffs complain occurred before the Alabama

verdict, there were eight months of activity in 2004-2005 where Continental Carbon could have changed its activities in response to that judgment.

Such evidence could also be admissible to show a common business plan among CCC's plants and CSRC. Finally, such evidence may be admissible with respect to Plaintiffs' alter ego claim. Evidence that a parent corporation paid (or routinely pays) the debts or judgments of its subsidiary can lead to a finding of alter ego liability.

After conducting the balancing test mandated by Rule 403 of the Federal Rules of Evidence, the Court finds that the evidence is admissible. Its probative value is not substantially outweighed by the risk of prejudice or waste of time, particularly since the case will no longer be tried before a jury. The Court may decide to limit the presentation of such evidence to the extent that it finds it cumulative or unduly time-consuming.

*2. The City Case*

The Court finds that the City case is relevant to the present claims and defenses between the parties. It was filed in 2005 and was settled in 2006.[2] Evidence of who paid the resulting financial obligation is relevant to Plaintiffs' alter ego claim against CSRC. CCC argues that, even if the City case is relevant, such evidence is inadmissible under the Federal Rules of Evidence because it relates to a settlement agreement.

According to Rule 408, evidence of "furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in

---

[2] CCC settled the Plaintiffs' claims in 2006. The only claims remaining were CCC's third-party claims against COP. Ultimately, CCC dismissed those claims shortly before trial in 2008

compromising or attempting to compromise" a disputed claim is not admissible "to prove liability for, invalidity of, or amount of" the claim. While statements made during settlement negotiations are admissible when used to show witness bias or prejudice, they are not admissible for impeachment purposes generally. Fed. R. Evid. 403(a) and (b); 23 Charles Alan Wright, et al., Federal Practice and Procedure: Evidence § 5311.

While Plaintiffs argue that Rule 408 does not apply to the City case because the claims there are different than the present claims, the Court disagrees. Under Tenth Circuit precedent, if the settlement concerns claims that are related to the current claims, then Rule 408 applies. Bradbury v. Phillips Petroleum Co., 815 F.2d 1356, 1363 (10th Cir. 1987). The claims in the settlement are clearly related to the claims at issue in this case, so Rule 408 applies.

The Court finds that evidence of the settlement of the City case should be admitted on the issue of Plaintiffs' alter ego theory of liability with respect to CCC and CSRC. Plaintiffs are offering the evidence for a purpose other than to demonstrate liability for or invalidity of the claim or its amount. They are offering evidence that CSRC paid the sum provided in the settlement agreement as evidence that CSRC routinely pays the expenses and debts of CCC, and therefore that CCC is the alter ego or mere instrumentality of CSRC. However, any other evidence regarding this settlement is not admissible under Rule 408. Plaintiffs argue that evidence of the settlement should be admitted to rebut any claims made by CCC that other parties were not affected by their emissions, or that the amount of Plaintiffs' damages calculations is somehow inappropriate. The relevance of such evidence,

however, is contingent upon an inference regarding the motivations behind CCC choosing to settle the City case, which is an improper purpose under Rule 408. 23 Charles Alan Wright, et al., Federal Practice and Procedure: Evidence § 5308. Because Plaintiffs are only permitted to offer evidence of this settlement for such a limited purpose, the Court finds that no hearsay concerns are raised. There is no need to examine, or in fact even discuss, the claims that were ultimately settled in the City case.

Accordingly, CCC's Motion in Limine to Exclude Evidence Concerning Other Litigation (Dkt. No. 519) is GRANTED IN PART and DENIED IN PART. Likewise, CSRC's Motion in Limine to Exclude Evidence Concerning Other Litigation (Dkt. No. 518) is also GRANTED IN PART and DENIED IN PART. To the extent that the evidence presented at trial differs from that recited in the parties' briefs, the Court's ruling may be reconsidered.

IT IS SO ORDERED this 5th day of February, 2009.

ROBIN J. CAUTHRON
United States District Judge