**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| PONCA TRIBE OF INDIANS OF OKLAHOMA, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 05-445 (C) |
| | ) | |
| THE CONTINENTAL CARBON COMPANY, CCC USA CORP., AND THE CHINA SYNTHETIC RUBBER CORPORATION, | ) ) ) ) | CLASS ACTION |
| | ) | |
| Defendants/Third Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONOCOPHILLIPS, a Corporation, | ) | |
| | ) | |
| Third Party Defendant. | ) | |

**FINAL ORDER GRANTING FINAL APPROVAL**
**OF CLASS SETTLEMENT AND DISMISSAL WITH PREJUDICE**

This matter comes before the Court on the Plaintiffs' Unopposed Motion for Final Approval of the Settlement, Allocation Plan, Incentive Awards, Attorneys' Fees and Costs [DKT 663]. This action was initially brought by the Plaintiffs under common law tort theories for interference with the use and enjoyment of their properties, as well as for damage to real and personal property. Plaintiffs also sought medical monitoring. On January 3, 2007, the Court certified a class of property owners. The Class is now defined as:

> all enrolled members of federally recognized Native American Tribes owning an interest (including mortgagee and other security interests) in real property situated within the Property Class Area

See Notice of Proposed Settlement of Class Action; (Dkt. No. 269, Class Certification Mem. Op. & Order at 17.).  The Property Class Area has been defined and identified in a map, which was attached to the class notices, the forms of which were previously approved by the Court.

Notice of class certification was provided to the Class on October 1, 2007 pursuant to this Court's Order.  Supplemental notice of the bench trial date was provided to the Class on January 16, 2009 also pursuant to the Court's Order.  On October 31, 2008 and again on January 23, 2009, the Court ordered the parties to settlement conference.  After numerous meetings before Judge West, the parties reached a settlement on February 6, 2009, the last business day before trial was scheduled to commence.

Upon consideration of the Unopposed Motion and the record in this matter, the Court FINDS, ORDERS AND DECREES as follows:

1.    The Court has jurisdiction over the Plaintiffs, the Defendants, and the subject matter of this action.

2.    Pursuant to and in full compliance with this Court's Orders and with Rule 23 of the Federal Rules of Civil Procedure, due and adequate notice was directed to all persons who are settlement Class Members, advising them of the settlement, the plan of allocation to each class member, including the specific minimum amount the class member would receive, the attorneys' request for reimbursement of costs and fees, and providing them with the right to opt out or to

2

object thereto. No substantive objections were filed to the settlement or the overall amount of attorneys' fees and expenses. Counsel provided evidence at the hearing that there were eight (8) opt outs out of 1,800 Class Members. A full and fair opportunity was accorded to all Class Members to be heard with respect to the settlement, the plan of allocation, and the attorneys' request for reimbursement of costs and fees.

3.    The terms of the settlement as set forth in the Unopposed Motion and in the Settlement Agreement attached to the Motion for Preliminary Approval are approved as a fair, reasonable, adequate and equitable compromise for the claims made against the Defendants.

4.    The terms were achieved through extensive arms-length bargaining between the Plaintiffs and the Defendants, with the assistance of Senior District Judge Lee West over the course of several days of settlement conferences. The settlement was fairly and honestly negotiated, and the settlement is in the best interests of the members of the Class. *See Jones v. Nuclear Pharmacy, Inc*., 741 .2d 322, 324 (10th Cir. 1984); *Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1188 (10th Cir. 2002).

5.    There were serious and novel questions of law and fact and the ultimate outcome of the litigation was in doubt. Therefore, the immediate recovery of the settlement funds for the Class and the

Tribe outweighs the mere possibility of future relief after continued and expensive litigation. *See Rutter*, 314 F.3d at 1188.

6.     The plan of allocation provides for a distribution of funds to all members of the Class. Such a plan only needs to be formulated by competent and experienced counsel and to have a reasonable and rational basis to be legally adequate. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1262 (D. Kan. 2006). In this case, the plan of allocation exceeds the legal requirements, because it is based upon objective facts learned during the litigation, applied by Plaintiffs' damages expert, Mark Berkman, Ph.D., who is a qualified economist. Additionally, the Plaintiffs employed an expert in data management, Gavin Manes, Ph.D., who worked with class counsel to ensure that the notices provided to Class Members were accurate and that the funds will be distributed to the right persons in accordance with the allocation plan. The methods employed by class counsel and these experts have a reasonable and rational basis.

7.     Another factor in approving the plan of allocation is the reaction of the Class. *In re Paine Webber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). In this case, there are no objections to the settlement, and there are only eight (8) opt outs out of approximately 1,800 Class Members. The Court therefore approves the plan of allocation.

8.  The special circumstance fund shall be created and the owners of the five homes nearest the plant shall be paid from that fund, with title to those homes to be transferred to the Continental Carbon Company ("CCC") as set forth in the Settlement Agreement.  After the deduction of expenses and attorney fees, the remaining funds shall be distributed to the Class.  The Court approves the payment of 25% of the calculated damages to the individual owners of homes in the White Eagle community because of the Ponca Tribe's ownership and maintenance of those properties.  The Ponca Tribe owns homes and buildings within the Class Area that serve the Class.  The Tribe shall be paid from the settlement as though it were a class member and shall receive 75% of the settlement fund relating to the homes in White Eagle.

9.  The Plaintiffs are ordered within 30 days to evaluate any claims of ownership of property interests made by currently unknown class members and to pay their claims if proved, according to the Plan of Allocation, from the 5% set aside fund.  Such individuals and their properties shall become a part of this class for settlement purposes. Any funds remaining in the set aside fund shall be allocated to the remaining class members according to the Plan of Allocation.

10. The practice of granting incentive awards to Class Representatives is common and widespread in class litigation.  *See e.g., In Re: Mego*

*Fin. Corp., Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ($5,000.00 incentive award to each of two class representatives in $1.725 million settlement); and *Shaw v. Toshiba*, 91 F.Supp.2d 942 (E.D. Tex. 2000) ($25,000.00 incentive award for each of two class representatives).

11.     In this case, counsel has recommended Class incentive awards ranging from $1,000 to $15,000 to be paid to the Class Representatives. The requested incentive awards are approved, in the amounts below, as fair, reasonable and adequate, considering the foregoing legal authorities and the effort and time expended and the expenses incurred by the Class Representatives in representing the interests of Class Members, as well as considering the outcome of the settlement.

$15,000.00 to each: Karen Howe, Harvey Atkins, and Amos Hinton;

$10,000.00 to Thurman Buffalohead; and

$1,000.00 to each: Montana Feathers and Roberta Jean Roy

12.     Counsel have requested that their fees and costs be reimbursed from the common fund established under the terms of the settlement. Counsel have incurred $1,795,048.45 in expenses. Of this amount, $150,000.00 was, after the settlement was reached, converted into a grant to the Ponca Tribe subject to the money being used for the sole

purpose of assisting with the burials of Ponca Tribal members, See Paragraph 21 below.

13.   Counsel has thus incurred $1,645,048.45 in reimbursable expenses.

14.   Counsel has expended over 15,000 hours of time prosecuting the claims in this case, for a lodestar total of $4,008,103.52.   Counsel have an agreement with the Tribe and the Class Representatives for fees constituting 40% of the settlement fund, for a total of $4,200,000.00 in fees, which total is fair, reasonable, and appropriate in light of the circumstances presented by this settlement.

15.   When a representative successfully establishes a common fund in which others have a beneficial interest, the costs and attorneys fees of the resulting litigation should be spread among the fund's beneficiaries.  *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).   Well-established Tenth Circuit precedent expressly favors awarding attorneys' fees based on a percentage of a common fund created by the litigation.  In *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988), the Tenth Circuit affirmed the propriety of awarding attorneys' fees on a percentage basis in a common fund case.  In *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994), the Tenth Circuit reversed a District Court decision not to adopt a special master's fee award based on the percentage of the

fund method, making clear that although either the percentage or the "lodestar" method can be used in appropriate cases, the percentage approach is preferred. 43 F.3d at 483 (citing *Uselton v. Comm. Lovelace Motor Freight*, 9 F.3d 849, 853 (10th Cir. 1993)); *see also Millsap v. McDonnell Douglas Corp.*, No. 94-CV-633-H(M), 2003 U.S. Dist. LEXIS 26223, at *41 (N.D. Okla. May 28, 2003) (Holmes, J.) ("Attorneys must have an incentive to take undesirable cases in order to assure access to the courts for all people; awarding fees based on a reasonable percentage of the recovered fund provides such an incentive.").

16.   Pursuant to *Gottlieb*, the Court must also consider the *Johnson* factors to determine the reasonableness of a common fund fee award. Counsel's time and labor necessary to resolve this case were substantial:  The number of hours class counsel expended (15,188 hours) attests to the aggressive and extensive effort by all concerned. The cumulative lodestar of Counsel is $4,008,103.52.

17.   The fee requested is also fair and reasonable under a lodestar/multiplier analysis.  Under the lodestar method of analyzing a fee request, the number of hours counsel worked is multiplied by the hourly rate for each professional to derive a "lodestar," which is enhanced "by an appropriate multiplier to reflect litigation risk, the complexity of the issues, the contingent nature of the engagement,

the skill of the attorneys, and other factors." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 123 (2d Cir. 2005).

18. The Fee Request implies an incentive multiplier ranging between 1.0 and 1.4 for all hours invested in the case by counsel. The time and labor devoted by counsel here supports the award of the requested fee on a percentage basis.

19. The results obtained, which included a significant settlement payment of $10,500,000.00 and other valuable agreements from the Defendants, is also very favorable, particularly where there was a significant risk of no recovery or a lesser recovery following further extended litigation and potential appeals. Other factors further support an award of the fees requested. Those factors include: the skill and ability and experience of the attorneys involved; the preclusion of other employment; the customary fees in this type of case; the contract rate established pursuant to the agreement between the Tribe and certain class members and Class Counsel; the time limitations presented by the hotly contested litigation before this Court up until the very eve before trial; the undesirability of the case which included extraordinary expenses shouldered by Class Counsel

to file and maintain the case up to trial, which included engagement of several scientific and other experts; and awards in similar cases.

20. Counsel's request for reimbursement of costs and fees is supported by the Declaration of James Frasier, a very experienced Oklahoma attorney well-versed in Plaintiffs' litigation and associated contingency fee contracts. The requested incentive awards on top of the lodestar calculation (totaling $191,896.48), as set forth in the Fee Analysis attached to the Declaration of James Frasier, appear fair, reasonable and appropriate and are hereby approved. The Court thus approves a total fee of $4,200,000.00 as set forth in the Fee Analysis table attached to Mr. Frasier's Declaration because such award is fair, reasonable and appropriate in light of precedent, the record herein, and the application of the factors considered as guidance in determining such awards. The proposed allocation of attorneys' fees is fair and reasonable. However, the Court notes that Mr. Wright has objected to the proposed allocation of fees to him, and has apprised the Court of pending litigation between him and Mr. Aamodt in Tulsa County District Court. This Order does not resolve Mr. Wright's argument that he is entitled to more fees and does not impact the jurisdiction of the Tulsa County District Court in the case between Mr. Wright and Mr. Aamodt.

10

21.    Counsel asks the Court's permission to donate to the Ponca Tribe the amount of $150,000 of costs which were obtained by counsel as grants and expended for costs in litigation.  These monies, as explained by counsel at oral argument and in Ms. Free's Declaration filed with the Court on July 23, 2009, were given largely by another Indian Tribe and a foundation.  The Tribe and the foundation  desires that the funds be given to the Ponca Tribe to be used for only burial funds now that they have been recouped from the litigation. Accordingly, such funds will benefit the Class, and under the *Cy Pres* doctrine Counsel is permitted to pay $150,000 from recovered expenses to the Ponca Tribe to be used exclusively, and for no other purpose, to pay the costs of burials in the future pursuant to the terms of the Settlement Agreement.

22.    The Parties have apprised the Court that a bank account has been established to receive the Settlement Funds with the account ending in numbers 4378.  CCC is ORDERED to pay the Settlement Funds (as defined in the Settlement Agreement), together with applicable interest, as soon as practical.  In accordance with the terms of the Settlement Agreement and this Order, Counsel for Plaintiffs shall distribute the funds from that account.

23. It is further ORDERED that Counsel for Plaintiffs shall be reimbursed $1,645,048.45 for costs incurred from the Settlement Funds.

24. The Plaintiffs are ordered to account and report to the Court upon the expiration of 180 days from the date of this Order for the funds disbursed and the funds remaining of the total funds paid by CCC. At that time, the Plaintiffs are to propose to the Court the allocation of any unclaimed funds and the reasons therefore.

25. This order is a final judgment pursuant to Fed. R. Civ. P. 54.

26. Upon entry of this ORDER and CCC's deposit of the Settlement Funds in the referenced bank account, and in accordance with the Settlement Agreement, the deposit of the interest accrued, all claims asserted in this matter are dismissed with prejudice.

27. The Court retains jurisdiction relating to administration of the settlement.

28. The Court acknowledges existence of that action styled *Owen v. Continental Carbon Company*, Case No. CIV-09-399-C, also pending before this Court (the "Follow-on Class Action" as defined in the parties' Settlement Agreement here). This Court finally approved the class action settlement in _Owen_ in a fairness hearing conducted July 28, 2009 and as reflected in the Court's Order Granting Plaintiffs' Motion for Final Approval of the Settlement,

12

Distribution Plan, Incentive Award, and Attorney Fees and Costs and

Dismissal With Prejudice (Doc. No. 24 in *Owen*).

IT IS SO ORDERED this 31st day of July, 2009.

ROBIN J. CAUTHRON
United States District Judge